# Exhibit 1
## to
## Chippendales USA, LLC's
## Notice of Removal of Action

1

Jesse Banerjee
3573 3rd Street, suite 206
Los Angeles, CA 90020
Tel.: (310) 923-8788
Email: investigation@stevebanerjee.com

2

3

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 03 2023

David W. Slayton, Executive Officer/Clerk of Court

4

5

Attorney for JESSE BANERJEE, Petitioner IN PRO PER

6

7

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8

**LOS ANGELES COUNTY–STANLEY MOSK COURTHOUSE**

9

10

In the matter of:

11

THE ESTATE OF SOMEN BANERJEE

12

-----------------------------------------------------------------

13

JESSE BANERJEE,
                    Petitioner.

14

            vs.

15

16

CHIPPENDALES USA, LLC
Respondent

17

18

**CASE NO.:17STPB02593**

**PETITION FOR:**

**AN ORDER CONFIRMING USPTODECISION ON  CHIPPENDALES TRADEMARK AND ALL SERIES PARTAINING TO CHIPPENDALES AS FORMING PART OF THE ESTATE OF SOMEN BANERJEE;**

**REQUESTING §859 DOUBLE DAMAGES AGAINST CHIPPENDALES USA LLC**

**[Prob. Code §§ 850; 859]**

19

20

**Hearing Date:**
**Time:**
**Department:**

21

DATE OF HEARING:
6-29-23

Times: 8:30 Dept.: 67

22

23

Petitioner Jesse Banerjee, as administrator of the estate of Somen Banerjee,

24

petitions this Court for an order identifying and confirming that the trademark

25

of Chippendales trademark that is currently under the ownership of

26

Chippendales USA, LLC to be held as forming part of the estate of Somen

27

Banerjee, and administered and distributed by the petitioner, as successor

28

---

PETITION TO CONFIRM ASSETS OF THE ESTATE [PROBATE CODE § 850; 859]1

**Page 9**
**Exhibit 1**

administration as same was fraudulently sold as held by the USPTO.

Petitioner requests this Court order (1) upholding the decision of the USPTO to the effect that the purchase of the Chippendales trademark was fraudulent, (2) the Chippendales trademarks fraudulent sold forms part of the estate of Somen Banerjee, and to return same to the estate. (3) such other relief as the Court deems appropriate.

petitioner alleges:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under Probate Code sections 850(a)(3)(B) and 859 because the assets at issue belongs to the estate of Somen Banerjee, as same forms part of the estate of Somen Banerjee.

2. Venue is properly in Los Angeles County under Probate Code section 17005 because the Petitioner resides in Los Angeles County. Additionally, the principal place of Estate administration is in the Los Angeles County, within this judicial district.

## II.    FACTUAL BACKGROUND

3. Before the court is a matter which seeks to determine the Estate of Somen Banerjee.

4. The Petitioner is the eldest child of Somen Banerjee, and was granted letter of administration over the estate of the Somen Banerjee and seeks the interest in the trademark of Chippendales as being a proper asset of Somen Banerjee that was fraudulently sold.

5. Irene Banerjee lied that she was divorced and that she had the probate court appoint her the executor of the estate, when in actual fact, she did not.

---

PETITION TO CONFIRM ASSETS OF THE ESTATE [PROBATE CODE § 850; 859]2

6. Irene did not probated my late Somen's Estate by validating or to give legal notice in probate court, to pay the estate taxes or get the letter of administration from the court in order to be authorized to administer the estate and asset of Somen Banerjee after his death. Also no ancillary probate that is applicable in the case of Somen assets was not done.

7. Somen Banerjee acquired a trademark that he registered and known as Chippendales as the owner and chief executive officer of Easebe Enterprises Inc. Somen Banerjee used the trademark for commercial purposes around 1979 and registered in 4/13/1981. The legal description of the trademark is marked as **EXHIBIT A**.

8. As a matter of fact, Somen Banerjee had title of the said Chippendales trademark.

9. The trademark remained titled in Somen Banerjee until his death on the 23rd October, 1994. Ownership of the trademark was vested on Somen Banerjee alone as the owner of Easebe Enterprises. A true and correct copy of the "Affidavit of Death of Somen Banerjee" is attached as **Exhibit B**.

10. After Somen Banerjee acquired the trademark Chippendales, there was no transfer of the Chippendales trademark prior to the death of Somen Banerjee and is still producing money to the Estate of Somen Banerjee.

11. Meanwhile, there was a sophisticated fraud orchestrated by CLP Tours LTD and attorney David Laurence Gernsbacher in collaboration with Irene Banerjee, (Petitioner's stepmother).

12. The fraud was perpetuated by the CLP Tours LTD and Irene Banerjee by projecting a sham sale of the Chippendales trademarks to CLP Tours, which said purchase agreement was prepared by CLP Tour, using attorney David Laurence Gernsbacher to give it some sort of legal recognition.

13. It given executing the fraud, Irene projected herself as a partner in Easebe Enterprises Inc, meanwhile, there was never a time that Irene Banerjee was a director or partner of the

trademark of Easebe Enterprises Inc. as the corporation document clearly showed that the directors of Easebe Enterprises Inc. when it was created in 1975 are: Somen Banerjee, Subrata Banerjee, and Prakashi Chandani were the directors. A copy of the Corporation document is hereby attached and marked **EXHIBIT C**.

14. Upon the death of the Somen Banerjee, Ms Irene Banerjee added herself as a partner/president of Easebe Enterprises Inc. one year after the death of Somen Banerjee. A copy of the corporation document with which Irene added herself as partner/president is attached and marked **EXHIBIT D**.

15. After adding herself as partner/president, Irene Banerjee subsequently sold the Chippendales trademark (worth $50,000,000.00, fifty million dollars) as executor of Ms Irene Banerjee for $1,000,000.00 (One Million Dollars) to CLP TOUR, LTD and since then the trademark had been fraudulently transferred out of the estate of Somen Banerjee. A copy of the Purchase Agreement is attached and marked **EXHIBIT E**.

16. The money received from the sale was wired to a Belgium account to the attorney David Laurence Gernsbacher who helped in all their fraudulent transactions/sham transaction.

17. David Laurence Gernsbacher is CLP TOUR LTD attorney, who drafted the purchase agreement, and also removed homes from trust and who helped Helen steal petitioner's inherence money into Helen Maryman's (Irene Banerjee's sister) and her husband's bank account in Luxembourg. They have fraudulently transferred out of the estate of Somen Banerjee

18. On its part, CLP Tours LTD, legal representatives deliberately did not do any due diligence in ensuring that the seller of the Chippendales trademark (that is, Irene Banerjee) had the legal authority to sell. This was because the purchase was a sham and an insider dealing. More so

as CLP TourLTD, was incorporated for the sole purpose of fraudulently purchasing the Chippendales trademark.

19. As a matter of fact, the company, CLP Tour LTD, was registered/incorporated on the 22nd of September, 1994, barely one month before the fraudulent purchase of Chippendales trademark.

20. Sometime around 1995, CLP TOUR sold the trademark to Lou Pearlman who created the corporation in Las Vegas Chippendales USA LLC and operated for a few years without registering the trademark generating millions with no legal authority or legal business under commercial code. Not registering it with the USPTO that's not a standard business practice and a very deceptive action to conduct business disregarding the USPTO requirements. Irrespective of the fact that CLP TOUR was represented by attorneys who know the legal procedure, yet they did not follow the path of due diligence, but hurriedly concluded the purchase with due diligence.

21. Kevin Denberg who purchase Chippendales USA LLC registered the trademark a few years later after their fraudulent purchase, and they did not buy it as any legitimate business.

22. The United State Patent and Trademark Office did give a decision to the effect that the sale and purchase of Chippendales trademark from Irene Banerjee by CLP TOUR was fraudulent and thereby set aside the said sale of Chippendales trademark. Therefore voiding any sale or transaction after Somen Banerjee death. A copy of the USPTO letter of the decision of the USPTO is hereby attached and marked as **EXHIBIT F**.

23. More so as the trademark was should to the subsequently sold to Kevin Denberg, who bought the trademark in 2000 from Louis Jay Pearlman who did massive Ponzi scheme notorious

manager scammed investors out of million,and was sentenced to 25 years in prison, for conspiracy, money laundering, and making false statements.

24. Meanwhile, there is copious evidence to the effect that Helen Maryman had intermeddled with the Estate of Somen Banerjee.

25. Helen Maryman has in bad faith wrongfully taken, concealed, or disposed of Chippendales belonging to the estate of a Somen Banerjee.

26. Lindsay Banerjee and Christian Banerjee, my sister and brother respectively, never question the sale of their mother and never filed any lawsuits against CHIPPENDALES USA LLC, in a recent cease and desist letter to HULU they responded with an affirmation that Irene had legally owned the trademark, the only way they can make those declaration is by my brother or sister making such fake claims.

### III.    LEGAL ARGUMENT

27. Probate Code Section 850(a)(3)(B) authorizes a trustee to bring a petition "where the trustee has a claim to real or personal property...." Here, Petitioner, as administrator of the estate of Somen, is claiming an interest in the trademark of Chippendales as being a proper asset of Somen Banerjee and was fraudulently sold.

28. An authorized method of administering the property of a deceased person as in this case is to obtain a letter of administration from the court. Which in this case, Irene Banerjee and Helen never did, but proceeded to sell the trademark Chippendales trademark fraudulently.

29. Petitioner respectfully requests that this Court confirm that the trademark is an asset of the estate to be held and administered as transfer same.

---

PETITION TO CONFIRM ASSETS OF THE ESTATE [PROBATE CODE § 850; 859]6

30. In the case of *Parker v. Schwarcz* (Marin County Case No. PRO-2100630), the court reiterated that former section 851.5 provided "for a hearing in the probate court to determine ownership of property '(i)f a person dies in possession of, or holding title to, real or personal property which . . . is claimed to belong to another, or dies having a claim to real or personal property, title to or possession of which is held by another, . . .' upon a petition brought by the executor, administrator, or any claimant." (Estate of Williams (1977) 73 Cal.App.3d 141, 143, fn. 1; see also Estate of Myers (2006) 139 Cal.App.4th 434, 441(Myers).) As explained in Estate of Linnick (1985) 171 Cal.App.3d 752, "Section 851.5 . . . provide[d] the authority and the procedure for the hearing of a petition by a decedent's estate concerning any claim involving property allegedly wrongfully possessed by another." (Id. at p. 760.) The court in Estate of Scott (1987) 197 Cal.App.3d 913 (Scott), further noted that "to proceed under section 851.5 [a petitioner] must be attempting to recover assets in which there is an interest belonging to the decedent, hence, to the estate." (Id. at p. 918.) The successor statute to section 851.5 was section 9860. (Parker v. Walker (1992) 5 Cal.App.4th 1173, 1184; Estate of Phelps (1990) 223 Cal.App.3d 332, 338.) That statute provided in pertinent part: "(a) The personal representative or any interested person may file a petition requesting that the court make an order under this chapter in any of the following cases: (1) Where the decedent while living is bound by a contract in writing to convey real property or to transfer personal property and dies before making the conveyance or transfer and the decedent, if living, could have been compelled to make the conveyance or transfer. (2) Where the 11decedent while living binds himself or herself or his or her personal representative by a contract in writing to convey real property or to transfer personal property upon or after his or her death and the contract is one which can be specifically enforced. (3) Where the decedent died in possession

of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another.  (4) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another."  (Former § 9860, subd. (a)(1)–(4).)  The Legislature adopted similar provisions in the guardianship and conservatorship context to address conveyances and transfers of real or personal property claimed to belong to a ward, conservatee, or third party with the enactment of sections 2520 to 2529.  (See former §§ 2520–2529.). It is important to note that the extant probate code is a similar provision with the aforementioned statutory provisions.

In re Pereira and Melo Dairy (Bankr. E.D. Cal. 2005) 325 B.R. 1, 4–5  (Pereira) [noting that "[s]ection 850 permits a conservator to sue third parties to recover property allegedly belonging to the conservator estate"].

31. Recent cases have observed that " '[t]he statutory scheme's purpose is to effect a conveyance or transfer of property belonging to a decedent or a trust or another person under specified circumstances, to grant any appropriate relief to carry out the decedent's [or settlor's] intent, and to prevent looting of . . . estates. [Citations.]  It provides the probate court with a mechanism to determine rights in property belonging to a decedent or to someone else.' " (Dudek v. Dudek (2019) 34 Cal.App.5th 154, 170–171; see also Estate of Kraus (2010) 184 Cal.App.4th 103, 117–118 (Kraus); Estate of Young (2008) 160 Cal.App.4th 62, 75 ["Section 850 et seq. provides a mechanism for court determination of rights in property claimed to belong to a decedent or another person."].).

32. In this instant case, it is clear that the selling of Chippendales trademark security interest by Helen Maryman was a clear looting of the estate of Somen Banerjee, an act that the provisions of section 850 of the Probate Code seeks to avoid. Consequently, we urge the court to hold

that Chippendales' trademark forms part of the estate of Somen Banerjee and transfer same accordingly.

33. Furthermore, it is our contention that Helen Maryman acted in bad faith by wrongfully taken, concealed, or disposed of Chippendales' property belonging to Somen Banerjee. Therefore, we urge this honorable court to invoke CA Prob Code § 859 (2021).

Wherefore, petitioner prays for:

1. An order upholding the decision of the USPTO holding that the sale of Chippendales trademark was fraudulent.

2. An order confirming that the trademark of Chippendales trademark that is currently under the ownership of Chippendales USA, LLC to be held as forming part of the estate of Somen Banerjee, and administered and distributed by the petitioner, as successor administration.

3. An order restraining Chippendales USA, LLC from using the Chippendales trademark, the subject matter of the fraudulent purchase agreement between CLP Tours, LTD and Irene Banerjee.

4. Such and further orders as the Court deems proper.

DATED: April 3, 2023

Respectfully submitted

JESSE BANERJEE

By PETITIONER

PETITION TO CONFIRM ASSETS OF THE ESTATE [PROBATE CODE § 850; 859]9

Page 17
Exhibit 1

## **VERIFICATION**

I, JESSE BANERJEE, Petitioner in this matter, declare that I have read the foregoing Petition, and know the contents thereof. I certify that the same is true of my knowledge, except as to those matters that are therein stated upon information or belief, and, as to those matters, I believe them to be true. If called to give live testimony to the foregoing facts I would testify to the same.

I declare under the penalties and pain of perjury under the laws of the state of California that the foregoing is true and correct, and that this Verification was signed by me on the date so indicated herein.

Dated: 4-3-22

_____
                                                    JESSE BANERJEE

## PROOF OF SERVICE
## (C.C.P. §§ 1013A, 2015.5)

|  |  |  |
|---|---|---|
| | ) | |
| STATE OF CALIFORNIA | ) § | **ESTATE OF SOMEN BANERJEE** |
| COUNTY OF LOS | ) | **Case No. : 17STPB02593** |
| ANGELES | ) | |

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to this within action.  My business address is: 10866 Washington Blvd Unit 154, Culver City CA 90232.

On April 3, 2023, I served the foregoing documents described as:

**AN ORDER CONFIRMING USPTO DECISION ON CHIPPENDALES TRADEMARK AND ALL SERIES PARTAINING TO CHIPPENDALES AS FORMING PART OF THE ESTATE OF SOMEN BANERJEE;**

**REQUESTING §859 DOUBLE DAMAGES AGAINST CHIPPENDALES USA LLC**

On all interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Chippendales USA LLC
4 Expressway Plaza Suite 218
Roslyn Heights, NY 11577

BROWN WHITE & OSBORN LLP
JACK B. OSBORN
333 S. Hope Street 40th Floor
Los Angeles, CA 90071

Christian Banerjee
1937 22nd Street, #4
Santa Monica, CA  90404

**Page 19**
**Exhibit 1**

**[X] Via the United States Postal Service as follows:** I am "readily familiar" with this business practice for collection and processing correspondence for mailing with the United States Postal Service. Under that practice it would be deposited with the United States Postal Service this same day with postage thereon fully prepaid at Culver City, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after the date for deposit for mailing in affidavit.

**[] By Personal Delivery:** [ ] Delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope clearly labeled to identify the attorney being served, with a receptionist or an individual in charge, between the hours of 9:00 a.m. and 5:00 p.m. [ ] Or, delivery was made to the party or by leaving the documents at the party's residence with some person over the age of 18 between the hours of 8:00 a.m. and 6:00 p.m.

**Name of person served:**
**Address:** *See service list above*
**Date:**                               **Time:**

[ ] **Via Facsimile** by causing such document to be served via facsimile on the parties in this action via facsimile numbers as stated on this proof of service.

**Fax Number where person served:** *See service list above*
**Time of service:**

[ ] **Via Email**, by causing such document to be served via email on the parties in this action email addresses as stated on this proof of service.

**Email address served:** *See service list above*

[ ] **Via Certified Mail**, Return Receipt Requested by causing a true copy and/or original thereof to be placed in a sealed envelope with postage thereon fully prepaid in the designated area for outgoing mail.

I caused such envelope to be deposited in the mail at Los Angeles, CA. The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 3, 2023 at Culver City, California.

**ALBERTO RODRIGUEZ**

745886

ARTICLES OF INCORPORATION

OF

EASEBE ENTERPRISES, INC.

FILED
In the office of the Secretary of State
of the State of California

AUG 2 9 1975

MARCH FONG EU, Secretary of State

By [signature]
                    Deputy

Restriction of right
to amend articles

No

Yes

FIRST:  The name of the corporation is EASEBE
ENTERPRISES, INC.

SECOND:  The Corporation's purposes are:

(a)  primarily to engage in the specific business of operating
restaurants and bars.

(b)  to engage generally in the business of purchasing,
selling, leasing all kinds of personal property, provided
that such activities are, except to an insubstantial degree,
in furtherance of its primary purposes.

(c)  to engage in any business related or unrelated to those
described in clauses (a) and (b) of this article that are from
time to time authorized or approved by the board of directors
of the corporation.

(d)  to act as partner or joint  venturer or in any other
legal capacity in any transaction.

(e)  to do business anywhere in the world.

(f)  to have and  exercise all rights and powers from time to
time granted to a corporation by law.

**Page 21**
**Exhibit 1**

The above purpose clauses shall not be limited by reference to or inference from one another, but each such purpose clause shall be construed as a separate statement confirming independent purposes and powers on the corporation.

THIRD:  The principle office for the transaction of the business of the corporation is located in the State of California, in the county of Los Angeles.

FOURTH:  (a)  the number of directors of the corporation is three.

(b)  this number can be changed only by the vote or written consent of the holders of 70% of the outstanding voting shares.  The number of directors cannot be changed by amendment of the by-laws of the Corporation. This article Fourth can be changed only by the vote or written consent of the holders of at least 70% of the outstanding voting shares.

FIFTH :  The name and address of each person appointed to act as a first director is:

| NAME | ADDRESS |
| --- | --- |
| SOMEN BANERJEE | 7508 Whitlock Avenue<br>Playa del Rey, California  90291 |
| SUBRATA BANERJEE | 7508 Whitlock Avenue<br>Playa del Rey, California  90291 |
| PRAKASH CHANDANI | 1314  17th Street<br>Santa Monica, California  90403 |

SIXTH:  (a)  this corporation is authorized to issue only one class of stock, which shall be designated common stock.  The total number of shares of common stock that this Coproration is authorized to issue is 3,000.  Each share shall be without par value.

- 2 -

(b)   the Corporation shall have only two shareholders.

SEVENTH:  Before any shareholder can sell or transfer his stock of the Corporation, he shall first offer the stock to the Corporation and then to the shareholders in the following manner:

(a)   the offering shareholder shall give a written offer, by mailing, personally delivering, or telegraphing it to the secretary of the corporation, stating the number and class of shares to be sold or transferred and the price, terms, and conditions of the proposed sale or transfer.  The Corporation shall then have the right to purchase all or any whole number of the shares offered, at the price and on the terms and conditions stated in the offer, by giving written notice to the offering shareholder of its election to purchase shares and of the number of shares it intends to purchase.  This notice shall be given by mailing, personally delivering, or telegraphing it within 30 days after the offering shareholder's offer is given. If the Corporation elects to purchase less than all the shares being offered, or fails to give notice of its election to purchase within the period that it has the right to do so, the secretary of the corporation shall as soon as possible, and in no event more than 30 days after the offering shareholder's offer is given, mail, personally deliver, or telegraph to each of the shareholders a copy of this offer together with a statement of the number of shares not being purchased by the Corporation.

Page 23
Exhibit 1

Each of these shareholders shall then have the right to purchase
all or any lesser number of the shares specified in the state-
ment from the secretary by giving to the secretary a written
notice of intent to purchase a specified number of these shares
at the price and on the terms and conditions stated in the
offering shareholder's offer.  This notice shall be given by
mailing, personally delivering, or telegraphing it within 30
days after the offering shareholder's offer is given to the
secretary.

(b)  if the total number of shares specified by the shareholders
in their notices of intent to purchase exceeds the number of
available shares specified in the statement from the secretary,
each purchasing shareholder shall be entitled to purchase that
fraction of the number of shares specified in his notice of
intent to purchase that is equal to the number of his shares
having purchase rights under this article, divided by the
total number of shares having purchase rights held by all share-
holders who gave notice of intent to purchase.

(c)  if less than all the shares offered for sale by the offering
shareholder are subscribed to under clauses (a) and (b) of this
article, each shareholder desiring additional shares shall be
entitled to purchase that fraction of the shares not subscribed
to that is equal to the number of his shares having purchase
rights under this article, divided by the total number of
shares having purchase rights held by all shareholders
desiring to purchase these remaining shares.

**Page 24**
**Exhibit 1**

(d)  Unless otherwise specifically stated in a shareholder's notice of intent to purchase shares given under clause (a) of this article, that notice shall also be considered an offer to purchase the number of shares to which he is entitled under clauses (b) and (c), not to exceed, however, the number of shares specified in his notice of intent to purchase.

(e)  each offer, notice, or statement provided for in this article shall be considered given when it is personally delivered to the person to whom it is to be given, or it is personally delivered to the person to whom it is to be given, or it is properly addressed and deposited in the United States mail or delivered to a telegraph office with all postage or other charges fully prepaid.

(f)  if less than all shares specified in the offer to the secretary are subscribed to under clauses (a), (b), and (c) of this article within the time periods specified for exercising the respective rights to purchase shares granted under this article, the offering shareholder shall not be required to accept any of the offers made under this article by the Corporation or its shareholders, and may dispose of all the shares specified in his offer to the secretary to any person or persons, provided that he shall not sell or transfer these shares at a lower price or on more favorable terms than those specified in the offer to the secretary.

**Page 25**
**Exhibit 1**

(g)  unless otherwise prohibited by law or by these articles of incorporation, the Corporation may purchase its own shares from any offering shareholder.  The Corporation shall not purchase all its outstanding voting shares.  Any sale or transfer, or purported sale or transfer, of the Corporation's shares by any shareholder shall be null and void unless the terms, conditions, and provisions of this article are strictly followed.

IN WITNESS WHEREOF, each above named first director of this Corporation has executed these articles of incorporation this ___29th___ day of ___AUGUST___, 1975.


_____
SOMEN BANERJEE

_____
PRAKASH CHANDANI

_____
SUBRATA BANERJEE

STATE OF CALIFORNIA      )
                         :   ss.
COUNTY OF LOS ANGELES    )

On August 29, 1975, before me, the undersigned, a Notary Public in and for said State, personally appeared SOMEN BANERJEE and SUBRATA BANERJEE and PRAKASH CHANDANI, known to me to be the person whose names are subscribed to the within instrument, and acknowledged to me that they executed the same.

WITNESS MY HAND AND OFFICIAL SEAL.

OFFICIAL SEAL
OTTO F. SWANSON
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires September 5, 1977

Notary Public

**Page 27**
**Exhibit 1**

CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
## REGISTRAR-RECORDER/COUNTY CLERK

**AFFIDAVIT TO AMEND A RECORD**

95-0002401

39419046383

☐ BIRTH   ☒ DEATH   ☐ FETAL DEATH
**NO ERASURES, WHITEOUTS, OR ALTERATIONS**

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

STATE FILE NUMBER

| STATE/LOCAL REGISTRAR USE ONLY | 1A. | 1B. | 1C. |
|---|---|---|---|

## PART I   INFORMATION TO LOCATE RECORD—TYPE OR PRINT IN BLACK INK ONLY

**NAME AS IT APPEARS ON RECORD**

| 1A. NAME—FIRST (GIVEN) | 1B. MIDDLE | 1C. LAST (FAMILY) |
|---|---|---|
| Somen | | Banerjee |

**ADDITIONAL INFORMATION TO LOCATE RECORD**

| 2. SEX | 3. DATE OF EVENT—MONTH, DAY, YEAR | 4A. CITY OF OCCURRENCE | 4B. COUNTY OF OCCURRENCE |
|---|---|---|---|
| M | 10/24/1994 | Los Angeles | Los Angeles |

| 5. FATHER'S NAME AS STATED ON ORIGINAL | 6. MOTHER'S NAME AS STATED ON ORIGINAL |
|---|---|
| Satyabhusan – Banerjee | Jayasree – Mukherjee |

## PART II   STATEMENT OF CORRECTIONS—NO ERASURES, WHITEOUTS, OR ALTERATIONS

**LIST ONE ITEM PER LINE**

| 7. CERTIFICATE ITEM NUMBER | 8A. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8B. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|
| 40 | Res: Irene Banerjee, 151 Napoleon Street, Playa Del Rey, CA 90293 | ½ – Res: Irene Banerjee, 151 Napoleon Street, Playa Del Rey, CA 90293, ½ – Res 22 R.G. Kar Road, Shambazar, Calcutta 700004 |
| 41 | CR/RES                2 of 2 | CR/TR/RES |

| REASON FOR CORRECTION | 9.   To correct the record. |
|---|---|

**AFFIDAVITS AND SIGNATURES**

We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct.

**TWO PERSONS MUST SIGN THIS FORM**

**USE BLACK INK ONLY**

| 10A. SIGNATURE OF FIRST PERSON | 10B. TITLE/RELATIONSHIP TO PERSON IN PART I | 10C. DATE SIGNED |
|---|---|---|
| ✍ | Funeral Director | 10/31/1994 |
| 10D. AGE  Legal | 10E. ADDRESS (STREET, CITY, STATE, ZIP)  1925 Arizona Avenue, Santa Monica, CA 90404 | |

| 11A. SIGNATURE OF SECOND PERSON | 11B. TITLE/RELATIONSHIP TO PERSON IN PART I | 11C. DATE SIGNED |
|---|---|---|
| ✍ | Funeral Director | 10/31/1994 |
| 11D. AGE  Legal | 11E. ADDRESS (STREET, CITY, STATE, ZIP)  1925 Arizona Avenue, Santa Monica, CA 90404 | |

**STATE/LOCAL REGISTRAR USE ONLY**

| 12. SIGNATURE OF STATE OR LOCAL REGISTRAR  OFFICE OF THE STATE REGISTRAR OF VITAL STATISTICS | 13. DATE ACCEPTED FOR REGISTRATION  JAN 2 7 1995 |
|---|---|

STATE OF CALIFORNIA, DEPARTMENT OF HEALTH SERVICES, OFFICE OF STATE REGISTRAR

CAL0SAN602

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.



**DEAN C. LOGAN**
Registrar-Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying the

JUN 2 3 2016



1000001171961

CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
## REGISTRAR-RECORDER/COUNTY CLERK

**AFFIDAVIT TO AMEND A RECORD**

**95-0002401**

**394190046383**

☐ BIRTH  ☒ DEATH  ☐ FETAL DEATH

STATE FILE NUMBER

NO ERASURES, WHITEOUTS, OR ALTERATIONS

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

| STATE/LOCAL REGISTRAR USE ONLY | 1A. | 1B. | 1C. |
|---|---|---|---|

## PART I  INFORMATION TO LOCATE RECORD—TYPE OR PRINT IN BLACK INK ONLY

| NAME AS IT APPEARS ON RECORD | 1A. NAME—FIRST (GIVEN) Somen | 1B. MIDDLE – | 1C. LAST (FAMILY) Banerjee |
|---|---|---|---|

| ADDITIONAL INFORMATION TO LOCATE RECORD | 2. SEX M | 3. DATE OF EVENT—MONTH, DAY, YEAR 10/24/1994 | 4A. CITY OF OCCURRENCE Los Angeles | 4B. COUNTY OF OCCURRENCE Los Angeles |
|---|---|---|---|---|

| | 5. FATHER'S NAME AS STATED ON ORIGINAL Satyabhusan  –  Banerjee | 6. MOTHER'S NAME AS STATED ON ORIGINAL Jayasree  –  Mukherjee |
|---|---|---|

## PART II  STATEMENT OF CORRECTIONS—NO ERASURES, WHITEOUTS, OR ALTERATIONS

| | 7. CERTIFICATE ITEM NUMBER | 8A. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8B. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 40 | Res: Irene Banerjee, 151 Napoleon Street, Playa Del Rey, CA 90293 | ½ – Res: Irene Banerjee, 151 Napoleon Street, Playa Del Rey, CA 90293, ½ - Res 22 R.G. Kar Road, Shambazar, Calcutta 700004 |
| | 41 | CR/RES | CR/TR/RES |

*2 of 2*

| REASON FOR CORRECTION | 9. To correct the record. |
|---|---|

| AFFIDAVITS AND SIGNATURES | We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct. | | |
|---|---|---|---|
| TWO PERSONS MUST SIGN THIS FORM | 10A. SIGNATURE OF FIRST PERSON | 10B. TITLE/RELATIONSHIP TO PERSON IN PART I Funeral Director | 10C. DATE SIGNED 10/31/1994 |
| | 10D. AGE Legal | 10E. ADDRESS (STREET, CITY, STATE, ZIP) 1925 Arizona Avenue, Santa Monica, CA 90404 | |
| USE BLACK INK ONLY | 11A. SIGNATURE OF SECOND PERSON | 11B. TITLE/RELATIONSHIP TO PERSON IN PART I Funeral Director | 11C. DATE SIGNED 10/31/1994 |
| | 11D. AGE Legal | 11E. ADDRESS (STREET, CITY, STATE, ZIP) 1925 Arizona Avenue, Santa Monica, CA 90404 | |
| STATE/LOCAL REGISTRAR USE ONLY | 12. SIGNATURE OF STATE OR LOCAL REGISTRAR OFFICE OF THE STATE REGISTRAR OF VITAL STATISTICS | 13. DATE ACCEPTED FOR REGISTRATION JAN 27 1995 | |

CALOSANGO02

STATE OF CALIFORNIA, DEPARTMENT OF HEALTH SERVICE, OFFICE OF STATE REGISTRAR

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.

JUN 2 3 2016

**Dean C. Logan**
DEAN C. LOGAN
Registrar-Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying the



1000001171961

Exhibit 1

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
### REGISTRAR-RECORDER/COUNTY CLERK

## CERTIFICATE OF DEATH
### STATE OF CALIFORNIA
USE BLACK INK ONLY/NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV. 7/93)

**39419046383**

STATE FILE NUMBER | LOCAL REGISTRATION NUMBER

**DECEDENT PERSONAL DATA**

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT—FIRST (GIVEN) | SOMEN |
| 2. MIDDLE | |
| 3. LAST (FAMILY) | BANERJEE |
| 4. DATE OF BIRTH MM/DD/CCYY | 10/08/1946 |
| 5. AGE YRS | 48 |
| 6. SEX | M |
| 7. DATE OF DEATH MM/DD/CCYY | 10/24/1994 Fnd |
| 8. HOUR | 0435 |
| 9. STATE OF BIRTH | INDIA |
| 10. SOCIAL SECURITY NO. | 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 |
| 11. MILITARY SERVICE | 19 — TO 19 — X NONE |
| 12. MARITAL STATUS | MARRIED |
| 13. EDUCATION—YEARS COMPLETED | 16 |
| 14. RACE | INDIAN |
| 15. HISPANIC—SPECIFY | X NO |
| 16. USUAL EMPLOYER | SELF-EMPLOYED |
| 17. OCCUPATION | BUSINESS OWNER |
| 18. KIND OF BUSINESS | ENTERTAINMENT |
| 19. YEARS IN OCCUPATION | 20 |

**USUAL RESIDENCE**

| Field | Value |
|---|---|
| 20. RESIDENCE—STREET AND NUMBER OR LOCATION | 151 NAPOLEON STREET |
| 21. CITY | PLAYA DEL REY |
| 22. COUNTY | LOS ANGELES |
| 23. ZIP CODE | 90293 |
| 24. YRS IN COUNTY | 25 |
| 25. STATE OR FOREIGN COUNTRY | CALIFORNIA |

**INFORMANT**

| Field | Value |
|---|---|
| 26. NAME, RELATIONSHIP | ROBERT TYCHOWSKJ – BROTHER IN LAW |
| 27. MAILING ADDRESS (STREET AND NUMBER OR RURAL ROUTE NUMBER, CITY OR TOWN, STATE, ZIP) | 15 RAMONA AVENUE, BUFFALO, NEW YORK  14220 |

**SPOUSE AND PARENT INFORMATION**

| Field | Value |
|---|---|
| 28. NAME OF SURVIVING SPOUSE—FIRST | IRENE |
| 29. MIDDLE | KATHERINE |
| 30. LAST (MAIDEN NAME) | TYCHOWSKJ |
| 31. NAME OF FATHER—FIRST | SATYABHUSAN |
| 32. MIDDLE | |
| 33. LAST | BANERJEE |
| 34. BIRTH STATE | INDIA |
| 35. NAME OF MOTHER—FIRST | JAYASREE |
| 36. MIDDLE | |
| 37. LAST (MAIDEN) | MUKHERJEE |
| 38. BIRTH STATE | INDIA |

**1 of 2**

| Field | Value |
|---|---|
| 39. DATE MM/DD/CCYY | 11/01/1994 |
| 40. PLACE OF FINAL DISPOSITION | RES; IRENE BANERJEE, 151 NAPOLEON STREET, PLAYA DEL REY, CA  90293 |

**FUNERAL DIRECTOR AND LOCAL REGISTRAR**

| Field | Value |
|---|---|
| 41. TYPE OF DISPOSITION(S) | CR/RES |
| 42. SIGNATURE OF EMBALMER | Laura Cole |
| 43. LICENSE NO. | 7949 |
| 44. NAME OF FUNERAL DIRECTOR | GATES, KINGSLEY & GATES | FD-451 |
| 45. SIGNATURE OF LOCAL REGISTRAR | Robert C. Gates | 46. LICENSE NO. 19 | 47. DATE MM/DD/CCYY 10/31/1994 |

**PLACE OF DEATH**

| Field | Value |
|---|---|
| 101. PLACE OF DEATH | L.A. CO. JAIL |
| 102. IF HOSPITAL, SPECIFY: ONE | |
| 103. FACILITY OTHER THAN HOSPITAL | X OTHER |
| 104. COUNTY | Los Angeles |
| 105. STREET ADDRESS—STREET AND NUMBER OR LOCATION | 535 N. Alameda Street |
| 106. CITY | Los Angeles |

**CAUSE OF DEATH**

107. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR A, B, C, AND D)

| | | TIME INTERVAL BETWEEN ONSET AND DEATH | 108. DEATH REPORTED TO CORONER |
|---|---|---|---|
| IMMEDIATE CAUSE (A) | Asphyxia | unk | X YES   No. 94-09032 |
| DUE TO (B) | Hanging | unk | 109. BIOPSY PERFORMED |
| DUE TO (C) | | | 110. AUTOPSY PERFORMED X YES |
| DUE TO (D) | | | 111. USED IN DETERMINING CAUSE X YES |

| Field | Value |
|---|---|
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN 107 | None |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? IF YES, LIST TYPE OF OPERATION AND DATE | |

**PHYSICIAN'S CERTIFICATION**

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED. DECEDENT ATTENDED SINCE / DECEDENT LAST SEEN ALIVE MM/DD/CCYY

115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NO. | 117. DATE MM/DD/CCYY
118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS – ZIP

**CORONER'S USE ONLY**

| Field | Value |
|---|---|
| 119. MANNER OF DEATH | NATURAL / X SUICIDE / ACCIDENT / PENDING INVESTIGATION / HOMICIDE / COULD NOT BE DETERMINED |
| 120. INJURY AT WORK | |
| 121. INJURY DATE MM/DD/CCYY | 10/24/1994 |
| 122. HOUR | unk |
| 123. PLACE OF INJURY | Cell |
| 124. DESCRIBE HOW INJURY OCCURRED (EVENTS WHICH RESULTED IN INJURY) | Self Inflicted with Bed Sheet |
| 125. LOCATION (STREET AND NUMBER OR LOCATION AND CITY AND ZIP CODE) | 535 N. Alameda St, Los Angeles 90012 |
| 126. SIGNATURE OF CORONER OR DEPUTY CORONER | Maria C. Arreola |
| 127. DATE MM/DD/CCYY | 10/27/1994 |
| 128. TYPED NAME, TITLE OF CORONER OR DEPUTY CORONER | Deputy Coroner Maria C. Arreola |

**STATE REGISTRAR**

A B C D E F G H I | FAX AUTH. # | CENSUS TRACT

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.



**Dean C. Logan**
DEAN C. LOGAN
Registrar-Recorder/County Clerk

This is not valid unless prepared on an engraved border displaying the seal and signature of the Registrar-Recorder/County Clerk.

JUN 29 2018



1000001171962

CAL05ANG02

# EXHIBIT "E"


## CLP TOUR, LTD. - EASEBE ENTERPRISES, INC.
## PURCHASE AGREEMENT

     THIS AGREEMENT is made ~~September~~ *Oct* 5, 1994, ("Effective Date") by and between CLP TOUR, Ltd., a California limited partnership ("Buyer"), Easebe Enterprises, Inc., a California corporation ("Seller"), STEVE BANERJEE, an individual ("Steve") and IRENE BANERJEE, an individual ("Irene"). Buyer, Seller, Steve and Irene may sometimes hereinafter be referred to individually as a "Party" or collectively as the "Parties."

### R E C I T A L S

    A.    Seller is a California corporation. __EXHIBIT A__ lists each of the shareholders and their respective ownership interests.

    B.    Seller owns one hundred percent (100%) of the assets of the male dance entertainment business and related activities commonly known as "CHIPPENDALES" (hereinafter the "Business"). The Business is supervised from the headquarters at 2115 Pico Blvd., Santa Monica, California 90405 (the "Property"). A copy of the lease with respect to such Property is attached hereto as __EXHIBIT B__.

    C.    Seller:

        (i)    owns certain intellectual property, including, without limitation, all items set forth on the schedule attached hereto as __EXHIBIT C__ ("Intellectual Property");

        (ii)    owns certain displays, furniture, fixtures, equipment, including, without limitation, office machinery, tools, signs, and lighting fixtures (collectively referred to as the "Equipment"), a schedule of which is attached as __EXHIBIT D__. The Equipment is used in the Business;

        (iii)    owns certain inventory used in the Business (the "Inventory"), a schedule of which is attached as __EXHIBIT E__;

        (iv)    owns supplies used in the Business including, stationery, office supplies, forms, brochures (the "Supplies");

Buyer    Seller

Page 32
Exhibit 1

 

(v)   owns certain leasehold improvements located in the Property (the "Leasehold Improvements") described in EXHIBIT F;

(vi)   owns certain books and records pertaining to Seller's Business, including, without limitation, credit, payroll, personnel tax and accounting books, records and files (the "Business Records");

(vii)   any and all contract and beneficial rights (including all existing and prospective rights) with respect to ongoing contracts for Chippendales dance troupes and the rights to payment therefrom, whether in the United States, the United Kingdom or elsewhere, which shall include the right to receive payment therefrom after the Closing Date (the "Troupe Rights"); and

(viii)   certain rights and obligations with respect to that contract by and between Propaganda productions and Seller, ("Propaganda Agreement"), a copy of which is attached as EXHIBIT S, which Exhibit shall also set forth the rights and obligations of the Buyer and Seller with respect thereto.

D.   Buyer wishes to buy from Seller and Seller wants to sell to Buyer all Seller's right, title and interest in and to all of the assets used in conjunction with the Business, including, without limitation, all of the Intellectual Property, Equipment, Inventory, Supplies, Leasehold Improvements, Business Records, and Troupe Rights, all of which is sometimes collectively referred to as the "Assets," on the terms and conditions set forth in this Agreement. Buyer shall be allowed the right to occupy the Property by Seller for a period of ninety (90) days for $13,050, payable in three equal installments of four thousand three hundred fifty dollars ($4,350) each, beginning on the first day Buyer takes occupancy of the Property and then thirty (30) days and sixty (60) days after Buyer takes occupancy of the Property.

E.   Buyer, Seller and Irene have already executed an August 11, 1994, letter of intent, and this PURCHASE AGREEMENT is the "definitive agreement" referred to in that letter that results in a "binding commitment".

F.   Irene additionally owns the right to her own life story, including therein, any and all rights which Irene has with respect to the inspiration, planning, creation, preparation, organization and operation of the Business and the male dance entertainment production commonly known as "Chippendales." Irene will

Buyer    Seller

101201-5.buy                                    2

 

grant Buyer the option to purchase those rights pursuant to the terms and conditions of an agreement of this Agreement. The Parties are aware of the fact that the acquisition of the exclusive life story rights will be of benefit to Buyer in the continued operation and development of the Business.

NOW, THEREFORE, in consideration of the foregoing Recitals and for such other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

## 1. PURCHASE OF ASSETS.

1.1.   **Purchased Assets.** Seller shall sell, convey, assign, transfer and deliver to Buyer and Buyer shall buy all Seller's right, title and interest in and to the Assets, which includes, without limit, the following:

    1.1.1.   Intellectual Property;

    1.1.2.   Equipment;

    1.1.3.   Inventory;

    1.1.4.   Supplies;

    1.1.5.   Leasehold Improvements;

    1.1.6.   Business Records;

    1.1.7.   Troupe Rights; and

    1.1.8.   Propaganda Agreement, subject to EXHIBIT S.

1.2.   **When Transferred.** The Assets shall be transferred once the terms and conditions set forth in this Agreement are either satisfied or waived, which date is referred to as the "Closing Date," as set forth herein and shall be the date upon which the "Closing," as set forth herein, occurs.

1.3.   **Free And Clear.** The Assets shall be delivered to Buyer free and clear of any claim, liability, lien, pledge or encumbrance.

1.4.   **Leased Equipment.** In addition to the Assets, Seller leases those assets listed on **EXHIBIT J**. Seller shall provide Buyer with true and correct legible copies of such leases and Buyer shall have the right for a period of sixty (60) days after the Closing Date to assume any of those leases, if possible. Seller agrees not

                                                     Buyer   Seller

to cancel or cause such leases to be terminated prior to the expiration of such period.

2.    PURCHASE PRICE.

The purchase price for the Assets shall be One Million Eight Hundred Thousand Dollars ($1,800,000) ("Purchase Price"). The allocation of the Purchase Price to the Assets is set forth on EXHIBIT G and has been agreed to by the Parties.

3.    PAYMENT OF PURCHASE PRICE.

Upon the satisfaction or waiver by Buyer of all conditions precedent to Buyer's obligations hereunder, Buyer, or Buyer's assignee, shall pay the Purchase Price as follows:

3.1.    Promissory Note. At the Closing, Buyer shall execute and deliver to Seller its promissory note, in the form attached hereto as EXHIBIT H, in the original principal amount equal to One Million Dollars ($1,000,000) less the "Reduction," as set forth in subparagraph 9.5. The Promissory Note shall be secured by that certain Security Agreement, attached hereto as EXHIBIT I.

3.2.    Balance.

The balance of the Purchase Price, as adjusted by subparagraph 9.6, ("Balance"), less the amount set forth in subparagraph 7.3, shall be paid in cash or check to Seller, upon the receipt by Buyer of the "Governmental Approval," as defined herein.

4.    INTELLECTUAL PROPERTY.

Buyer is entering into this transaction specifically to acquire all intellectual property used in the Business owned by Seller. This property includes, but is not limited to:

4.1.    trademarks,

4.2.    trade names, including but not limited to fictitious business names and corporate names, and specifically including "Chippendales,"

4.3.    service marks,

4.4.    copyright applications and registered copyrights,

Buyer    Seller

101201-5.buy

4



4.5. design patents,

4.6. utility patents,

4.7. trade dress on all items used in conjunction with the Chippendales products,

4.8. the assignment of all model releases for any models depicted in any advertising or other promotion of Chippendales,

4.9. slogans,

4.10. telephone numbers and listings in telephone directories,

4.11. pictures,

4.12. calendars,

4.13. photos,

4.14. logos,

4.15. brochures,

4.16. methods of operation,

4.17. customer lists,

4.18. film elements in all stages of production, including the Propaganda Agreement, subject to EXHIBIT S,

4.19. video cassettes, including the Propaganda Agreement, subject to EXHIBIT S,

4.20. video tapes, including the Propaganda Agreement, subject to EXHIBIT S,

4.21. software in all tangible forms, including but not limited to, printouts, diskettes, tape and CD-Rom,

4.22. all goodwill owned by or associated with Seller and suitable for exploitation on all media throughout the world and in perpetuity whether developed, licensed or in the development or predevelopment stage;

Buyer      Seller

 

4.23.   all inventories of merchandise held for sale.

## 5.   ADDITIONAL MATTERS.

5.1.   Covenant Not To Compete. Irene, Steve, Seller and the officers, directors and any other shareholders of Seller shall each execute individual covenants not to compete, in the form attached hereto as EXHIBIT I, (collectively the "Covenants Not To Compete"). The Covenants Not To Compete shall generally prohibit participating, directly or indirectly, as a principal, shareholder, partner, lender, investor, advisor, employee, consultant, or independent contractor, with or without compensation or consideration of any form, in any entity and/or business engaged in any business activities similar in nature and scope to the Business in the territory set forth in EXHIBIT I for a period of five (5) years from the Closing Date.

5.2.   Equity Interest. As additional consideration for the Covenant Not To Compete with Irene, Irene shall receive a fifteen percent (15%) interest as a Class "B" Limited Partner in Buyer (the "Equity Interest"), pursuant to the terms and conditions of that certain Agreement of Limited Partnership, a copy of which agreement is attached hereto as EXHIBIT R.

5.3.   Consulting Agreement. Buyer and Irene shall enter into a consulting agreement, in the form attached hereto as EXHIBIT K, (the "Consulting Agreement") which shall generally provide for Buyer to pay Irene a consulting fee of $100,000 per year for 25 years. The first payment will be due on September 30, 1995, and continue thereafter on September 30 of the next twenty-four successive years. The Consulting Agreement shall be secured by the terms of that certain Security Agreement, in the form attached hereto as EXHIBIT U.

5.4.   Right To Reacquire Irene's Equity Interest. Buyer, or Buyer's assignee, as the case may be, shall have the right to reacquire Irene's Equity Interest, pursuant to the "Repurchase Option Agreement", attached hereto as EXHIBIT L, which shall generally provide:

5.4.1.   Manner Of Exercise. If Buyer chooses to exercise this option, it shall notify Irene in writing of its intent (the "Notice") within five (5) years of the Closing.

5.4.2.   Delivery. Buyer must pay the purchase price to Irene, as set forth below, within thirty (30) business days of her receipt of the Notice.

5.4.3.   Purchase Price and Terms. The purchase price for Irene's Equity Interest shall be five hundred thousand dollars ($500,000), paid as follows: (i) Two Hundred Fifty Thousand Dollars ($250,000) as a down payment, and (ii) a Two Hundred Fifty Thousand Dollar ($250,000) promissory note, interest

Buyer   Seller




only at six percent (6%) payable quarterly, all due and payable on or before fifteen (15) months thereafter or, at obligor's election, One Hundred Twenty Five Thousand Dollars ($125,000) in fifteen (15) months and One Hundred Twenty Five Thousand Dollars ($125,000) on or before twenty-seven (27) months.

      5.4.4.    **Security.** Buyer's promissory note is to be secured by the Equity Interest being purchased.

      5.4.5.    **Conditions.** The obligations of Buyer to (i) execute the Covenants Not To Compete, (ii) grant the Equity Interest, and/or (iii) execute the Consulting Agreement shall be conditioned upon the prior execution and delivery to Buyer on or before the Closing Date of (a) the Repurchase Option Agreement, and (b) the Governmental Approval. Buyer may, on or before the Closing Date, in its discretion, waive any or all of the conditions imposed by this subparagraph 5.4.5.

## 6.   CONVEYANCE OF TITLE.

At the Closing title to the Assets shall be conveyed by Seller to Buyer by means of Seller's execution and delivery to Buyer of a Warranty Bill of Sale and Assignment in the form and content of **EXHIBIT M**, or such other method as Buyer may reasonably require.

## 7.   ACCOUNTS RECEIVABLE.

    7.1.    **No Obligation of Buyer.** Buyer shall have no obligation to collect, or enforce collection of, any of Seller's accounts receivable.

    7.2.    **Receivables.** Seller shall give Buyer, at the Closing, a detailed list of its outstanding accounts receivable as of the Closing Date ("List"). Seller shall have the right to payment for those receivables with respect to which title to the merchandise sold has transferred to the purchasing customer prior to the Closing Date as such items appear on the List and the payments received are so identified. Buyer shall retain payments on all invoices and receivables identified as being for services rendered or products delivered post Closing Date by Buyer. If a payment is made to Buyer by a vendor appearing on the List and to which Buyer has also sold goods or services after the Closing Date but such payment does not clearly indicate for which obligation it is being tendered, Buyer shall pro rate the amount received based upon Buyer's outstanding receivable to such vendor and the receivable of Seller to such vendor created after July 1, 1994 and shown on the List. Buyer agrees to provide Seller with an accounting, beginning sixty (60) days after the Closing Date and each sixty (60) days thereafter, of any receipts by Buyer received after the Closing Date with respect to the items on the List, the payments for which have been clearly noted by the payor as to the particular invoice or receivable for which it made.

Buyer    Seller

 

7.3.    Set Aside for Returns. The Parties agree to set aside, as a reduction from the cash to be delivered by Buyer at the Close, pursuant to subparagraph 3.2, the amount of $37,500 for the purpose of accommodating customer refund requests whether for cash or merchandise credit, with respect to those pre-Closing sales made by Seller. Any returns made with respect to post-Closing sales shall be at Buyers cost. To the extent the amount set aside has not been used by Buyer for cash or merchandise credit by May 31, 1995, it shall be returned to the Seller by the Buyer. To the extent cash set aside pursuant to this subparagraph 7.3 is exhausted by cash or merchandise credits, the excess of the total credits shall be offset against payments due under the Promissory Note. Copies of all credits issued pursuant to this subparagraph 7.3 shall be provided to Seller. Seller may contest the credits but such contest is exempt only from that portion of the arbitration provisions of subparagraph 13.15, herein, which require Buyer to initiate arbitration concerning offset claims in excess of $5,000. All other terms of subparagraph 13.15 apply.

## 8.    LIABILITIES ASSUMED BY BUYER; INDEMNIFICATIONS BY SELLER.

8.1.    Assumed Liabilities. Except for the "Payables," as defined herein, assumed by Buyer pursuant to subparagraph 9.5, or as otherwise expressly assumed in writing and attached hereto as EXHIBIT N, Buyer shall not assume, and shall not be liable for any of Seller's obligations or liabilities, of whatever nature or status.

8.2.    Indemnification By Seller. Except for the matters set forth in subparagraph 8.1, above, Seller shall indemnify, defend, with counsel acceptable to Buyer, and save Buyer and its partners harmless from and against any and all:

8.2.1.    Claims, fines, obligations, demands, actions, suits, losses, costs, penalties, taxes, including, without limitation, sales tax, wages, other compensation or demands of Seller's employees and/or independent contractors, employment withholding and unemployment compensation insurance taxes, union benefits;

8.2.2.    Buyer's expenses, including, without limitation, Buyer's attorneys' fees and costs of litigation and investigation, in connection with or arising out of (i) title to or Seller's ownership of the Assets and (ii) Seller's conduct of the Business before the Closing Date;

8.2.3.    Breach of any representation or warranty;

8.2.4.    The failure of Seller or Irene, to the extent of her actual knowledge, to include a fact in a representation or warranty which is necessary so the representation or warranty is not misleading;

_____    _____
Buyer      Seller



8.2.5.    Except for those items paid by Seller on or before the Closing, and for which Seller delivers to Buyer, on or before the Closing Date, proof of such payment, (i) claims due to injury or death to any person, including Seller's customers and their guests; and (ii) claims for Seller's actions or inactions, with respect to events which occurred before the Closing Date, regardless of whether injury or death occurs before or after the Closing Date.

8.3.    Roberts Matter Indemnification.  Seller and Irene shall indemnify, defend, with counsel acceptable to Buyer, and save Buyer and its partners harmless from and against any and all liability with respect to the "Roberts Matter," as defined herein; provided that Buyer shall have the right to offset against such liability any and all amounts then remaining due to Seller pursuant to this Agreement and then, if necessary, to the amounts then remaining due to Irene pursuant to this Agreement or any ancillary agreement set forth as an Exhibit hereto. To the extent the indemnification is taken against sums due Irene, Buyer shall be entitled to a credit against the sums due Irene in an amount of $1.25 for each dollar expended by Buyer.

9.    BULK SALES WAIVER: ADJUSTMENTS FOR ASSUMED PAYABLES.

9.1.    Bulk Sales Provisions.  The Parties acknowledge that they are each aware of the provisions of California Commercial Code Division 6 and Uniform Commercial Code Article 6 concerning Bulk Sales ("Bulk Sales Provisions"). The Parties have decided not to avail themselves of the procedures set forth therein but to undertake an alternative method by which to provide for the payment of the liabilities otherwise addressed under the Bulk Sales Provisions.

9.2.    Waiver of Compliance.  Buyer and Seller hereby expressly acknowledge that each is aware of the rights, duties and protections afforded to each under the Bulk Sales Provisions, and each for himself, herself or itself hereby waive such rights, duties and protections.

9.3.    List of Payables.  Seller has previously delivered to Buyer a list of payables of Seller dated September 27, 1994, as set forth on EXHIBIT AA, and shall immediately deliver to Buyer a revised list of all accounts payable, claims and other liabilities of Seller, including, without limitation, any and all claims or demands made upon Seller, Steve and/or Irene, by the California Employment Development Department, and the California Department of Benefit Payments, showing the name, address, telephone number and amount for each item ("Payables"). That certain legal action brought against Seller by Gerald Roberts ("Roberts Matter") shall not be deemed a "Payable" for the purposes of this Agreement. All Gernsbacher and McGarrigle's fees and expenses, including without limitation, past, current and future fees (reasonably estimated), plus fees for this transaction shall be paid directly to Gernsbacher and McGarrigle out of the initial cash proceeds of

Buyer    Seller

9

purchase of Easebe's assets without offset or reduction. This payable cannot be negotiated by Buyer and shall be paid out of up front cash to Seller.

9.4.   **Buyer's Efforts**. Subject to the limitations in subparagraph 9.8, below but no earlier than 31 days after the Closing Date, Buyer shall have the right but not the obligation to negotiate reductions of and/or extended payment terms for any or all of the Payables.

9.5.   **Selected Items**. Buyer shall, on or before the Closing Date, select (i) certain of the Payables not due more than 120 days from the Closing Date which Buyer believes to be bona fide items in an amount of $200,000 (the "Reduction") and (ii) any additional amount of bona fide trade payables which Buyer is willing to assume at the Closing ("Assumed Payables"). The Reduction shall be offset against the original principal sum of the Promissory Note at the Closing.

9.6.   **Cash Offset**. Subject to subparagraph 9.8, below, the amount of the Payables, less the Reduction, shall reduce the amount due from Buyer, as set forth in subparagraph 3.2, above.

9.7.   **Escrow Account**. Buyer shall cause an escrow account to be established at Trans World Bank, Encino, California, into which Buyer shall deposit the amount of 50% of the cash offset amount as determined pursuant to subparagraph 9.6.

9.8.   **Seller's Right to Negotiate**. Buyer shall deliver to Seller a list of certain of the Payables with respect to which Seller agrees that it will not negotiate in any fashion, which list is attached as EXHIBIT AAA hereto; as Seller and Seller's shareholders acknowledge that such contact after the Effective Date will materially adversely effect the business of Buyer. Seller shall have the right to negotiate with and finalize the payment of any of the remaining Payables for a period of thirty (30) after the Closing Date. If Seller successfully negotiates the resolution of any of the remaining Payables, Buyer shall cause the Escrow to pay such negotiated amount upon the presentation to the escrow and Buyer of the amount to be paid and appropriate documentation providing for the full compromise and settlement of such Payable. The amount of any such discount negotiated by Seller, resulting from the payment of the negotiated Payable during the thirty (30) day period after the Closing Date, shall be distributed to Seller upon the expiration of such thirty (30) day period and the balance remaining in the escrow account shall be returned to the Buyer.

9.9   **Indemnification by Buyer**. Buyer agrees to indemnify, defend, with counsel acceptable to Seller, and save Seller, Irene and Steve harmless from and against any and all claims, actions, suits, losses costs, or other items resulting from the Assumed Payables. Such obligations of Buyer shall be secured prusuant to the provisions of the Security Agreement (Promissory Note).

## 10.   SELLER'S EMPLOYEES.

10.1.   **Termination of Employment**. Seller has represented to Buyer that it shall, before the Closing Date, terminate the employment of all of Seller's

Buyer   Seller



employees, including any who render services at the Property. Therefore, after the Closing Date, Buyer shall be free to engage those persons it desires, in its sole and absolute discretion, on any basis Buyer determines appropriate.

10.2. Payment of Compensation. As of the Closing Date Seller warrants and represents that it has fully compensated all employees for accrued wages, vacation, sick leave time, and any other benefits or compensation claims. Seller and Seller's shareholders, shall jointly and severally indemnify, defend, with counsel acceptable to Buyer, and save Buyer harmless from and against any and all expenses, claims, actions or administrative proceedings with respect to any employee or the termination of any employee of Seller.

## 11. SELLER'S MISCELLANEOUS OBLIGATIONS.

As of the Closing Date, Seller shall, for Buyer's benefit:

11.1. Certificates of Release. Deliver to Buyer Certificates of Release from the California Franchise Tax Board, California State Board of Equalization, and California Department of Benefit Payments (collectively referred to as the "Certificates of Release"). They must indicate full payment of all taxes due. The Certificates of Release shall be dated not earlier than thirty (30) days before the Closing Date. Seller agrees that in the event it has not received the Certificates of Release by the Closing Date, Buyer may reserve from the amount due to Seller pursuant to subparagraphs 3.2 and 3.1, an amount necessary to provide for the payment of taxes with respect to which the Certificates of Release relate.

11.2. Supersedure Forms. Deliver to Buyer executed telephone supersedure forms.

11.3. Statement of Abandonment. Deliver to Buyer a statement of abandonment of the fictitious business name under which the Seller conducts the Business (the "Statement of Abandonment") in accordance with California Business and Professions Code Section 17920, in a form suitable for filing with the County Clerk in which the Property is located.

11.4. Revocation of Agency Agreements. Deliver to Buyer the written termination, in a form acceptable to Buyer, of any and all agency agreements executed by Seller, other than the agency agreements set forth on EXHIBIT W, with a copy of the agency agreement so terminated, specifically including, without limitation, that agreement between Seller and Bob Green.

Buyer     Seller

 

11.5. **Buyer's Right to Waive.** Buyer shall have the right to waive any or all of the obligations imposed upon Seller pursuant to this Article 11, but Seller shall continue to be under an obligation to provide the item or items so waived no later than 30 days after the Closing Date.

12. **THE CLOSING.**

12.1. **The Closing.** The "Closing" shall be at the offices of Bruce Givner, A Professional Corporation, 12100 Wilshire Blvd., Suite 445, L.A., CA 90025. It shall occur no later than 5:00 p.m. Friday, September 30, 1994. The Closing will only take place if the conditions set forth herein have been either satisfied or waived by the party for whose benefit any condition exists.

12.2. **Documents and Items To Be Delivered by Seller on the Closing Date.**

On the Closing Date, Seller shall deliver to Buyer the following documents and items, executed (where required by its terms) and in form and substance satisfactory to Buyer's counsel:

12.2.1. Lease.

12.2.2 Warranty Bill of Sale and Assignment;

12.2.3. Certificates of Release;

12.2.4. Supersedure Forms;

12.2.5. Statement of Abandonment;

12.2.6. Inventory;

12.2.7. Supplies;

12.2.8. Leasehold Improvements;

12.2.9. Equipment;

12.2.10. Business Records;

12.2.11. Covenants Not To Compete, fully executed by those parties set forth in paragraph 5.1, hereof;

12.2.12. Consulting Agreement, executed by Irene;

Buyer    Seller

101201-5.buy

12




12.2.13.  Physical possession of the Property;

12.2.14.  Propaganda Agreement, subject to EXHIBIT S;

12.2.15.  Certificate of Good Standing of Seller from the State of California;

12.2.16.  Certificate signed by Seller's President and Secretary dated as of the Closing Date. This Certificate shall be to the effect that:

    12.2.16.1.  Seller's representations and warranties are correct in all respects on and as of the Closing Date, with the same effect as though they had been made as of the Closing Date;

    12.2.16.2.  Seller has performed in all respects all this Agreement's terms, covenants, and conditions to be performed by Seller on or before the Closing Date;

    12.2.16.3.  Resolutions of Seller's Board of Directors and Shareholders authorizing the execution and delivery to Buyer of this Agreement;

    12.2.16.4.  All necessary governmental and required third party approvals have been obtained to consummate this transaction.

12.2.17.  Certificate signed by Steve and Irene dated as of the Closing Date. This Certificate shall be to the effect that:

    12.2.17.1.  The representations and warranties of Steve and Irene, each for themself, are correct in all respects on and as of the Closing Date, with the same effect as though they had been made as of the Closing Date;

    12.2.17.2.  Steve and Irene have each for themselves performed in all respects

_____ _____
Buyer   Seller

13

Page 44
Exhibit 1



all this Agreement's terms, covenants, and conditions to be performed by Seller on or before the Closing Date:

12.2.18.  Resolution approved by all of Seller's outstanding shares authorizing the sale to Buyer of Seller's assets listed in this Agreement, certified by Seller's Secretary.

12.2.19.  All written assignments of all intellectual property, including but not limited to, trademarks, service marks, copyrights and patents in a form recordable in the United States Patent and Trademark Office, in the appropriate office of the Secretary of State for each state trademark and state service mark, and with the Registrar of copyrights respectively.

12.2.20.  All foreign trademarks, service marks, patents and copyrights in form recordable in the appropriate trademark office, patent office, and copyright office of each respective foreign country.

12.2.21.  An abandonment of all fictitious name statements in a form capable of being filed with the appropriate county where such fictitious name statements have been filed so that Buyer can file a new fictitious name statement in the same county.

12.2.22.  The written approval by the United States Government, in a form acceptable to the Buyer, on or before five (5) days after the Effective Date, to the form and content of this Agreement, as such approval relates to the matter presently pending before the forfeiture division of the United States Attorney's Office, Los Angeles, California, (the "Governmental Approval").

12.3.  **Agreement Regarding Governmental Approval.** Buyer and Seller acknowledge and agree that as a condition to the obligations of Buyer to complete the transaction set forth in this Agreement, Seller shall obtain the Governmental Approval no later than five (5) days after the Effective Date. If Seller has not obtained the Governmental Approval in that time, then Buyer shall thereafter have the right and authority to (i) waive the requirement of the Governmental Approval or (ii) cancel the transaction set forth in this Purchase Agreement.

Buyer          Seller

101201-5.buy

14

 

### 12.4. Documents To Be Delivered By Buyer at the Closing.

On the Closing Date, Buyer shall deliver to Seller the following documents, executed by Buyer (where required by its terms):

12.4.1. the Balance, as adjusted;

12.4.2. the Promissory Note; and

12.4.3. the Consulting Agreement, executed by Buyer or Buyer's assignee.

## 13. REPRESENTATIONS AND WARRANTIES OF SELLER AND IRENE.

Except as to those facts or matters specifically set forth in EXHIBIT V, Irene, only as to the best of her actual knowledge, and Seller represent, warrant and covenant to Buyer as follows:

13.1. Corporate Standing. Seller is a corporation duly organized, validly existing and in good standing under California law, has the corporate power to conduct its present business and is entitled to carry on the business and own, lease, and operate properties used in connection with the business.

13.2. Sufficiency of Assets. The Assets, other than cash and the accounts receivable which are the property of the Seller under this Agreement, are all of the assets of the Business and are sufficient to enable Buyer, following the Closing Date, to conduct the Business as such has been conducted in the past and prior to the Closing Date; provided, however, such representation and warranty does not ensure in any manner that Buyer will suceed and/or profit from the operation of the Assets in the Business.

13.3. Ownership of Assets. Except as set forth on EXHIBIT X, Seller is, and on the Closing Date will be, the lawful owner of the Assets. The assets are owned free and clear of all liens, pledges, encumbrances, options to buy, and claims of any kind or nature. Delivery to Buyer of the documents provided above will vest Buyer with good and marketable title to the Assets, free and clear of all liabilities, liens, pledges, encumbrances, options to buy, and claims of any kind or nature.

13.4. Loss Contingencies. Except as set forth on EXHIBIT Y, To the best of Seller's knowledge and other than those items listed in the Payables, there are no claims, actions, suits, proceedings or investigations pending or threatened against or relating to Seller, Steve or Irene with respect to the Seller, the Assets and/or the Business. This includes, without limitation, those at law or in equity, or

Buyer      Seller

101201-5.buy

15

before any governmental entity, or by any person which would prohibit or prevent the consummation of this sale as of the Closing Date, or will cause Buyer expenses after the Closing Date.

13.5.  <u>Payment of Taxes</u>. Except for those items listed in the Payables, or otherwise set forth on <u>Exhibit Z</u>. Seller has filed all federal, state and local income, excise or franchise tax returns, personal property tax returns, sales and use tax returns, employee withholding tax returns and other tax returns required to be filed by it. Seller has paid all taxes owing by it except taxes which have not yet accrued or become due.

13.6.  <u>Adverse Conditions</u>. Seller, to the best of its knowledge, knows of no fact which now or in the future may materially adversely affect the Assets or the Business which has not been specifically disclosed in this Agreement, except as set forth on <u>EXHIBIT O</u>.

13.7.  <u>Compliance with Laws</u>. The Business is in full compliance with all laws and regulations. This includes, without limitation, applicable building or fire codes, regulations, ordinances and statutes.

13.8.  <u>Other Agreements</u>. Except as previously disclosed to Buyer in writing, neither Seller, Irene, nor Steve is a party to any written or oral agreement relating to all or any interest in the Business, the Assets or the Property, which will affect in any manner Buyer's free and unfettered use and enjoyment of each of them. Neither the execution, performance or delivery of this Agreement by Seller, Steve or Irene violates or breaches any such agreements, which may in any manner affect the ability of Seller, Steve or Irene to complete the transaction set forth in this Agreement.

13.9.  <u>Authorization</u>. Seller's execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action. This Agreement includes, without limitation, actions by shareholders and directors. This will not violate Seller's Articles of Incorporation or Bylaws. The execution, delivery and performance of this Agreement by Seller, Steve or Irene will not violate provisions of law or any agreement or other instrument to which any of them is a party or by which it is bound. Nor will it be in conflict with, result in a breach of or constitute (with or without notice and with or without the lapse of time) a default under any agreement, deed of trust, collateral assignment, lien, lease, order, arbitration award, judgment or decision to which any of them is a party or by which it is bound.

13.10.  <u>Binding Obligation</u>. Seller, Steve and Irene has duly executed and delivered this Agreement and it constitutes legal, valid and binding obligations enforceable in accordance with its terms against each of them.




Buyer    Seller

101201-5.buy

16



**13.11.** <u>Violations</u>. Seller has fully complied with all regulations, ordinances, laws, orders, codes, rules, covenants and conditions affecting, relating or applicable to the Business, the Assets and the Property.

**13.12.** <u>Additional Representations and Warranties</u>. Those additional representations and warranties as more fully set forth on <u>EXHIBIT P</u>, "Additional Representations and Warranties," and any and all Schedules attached thereto.

**13.13.** <u>Duration of Representations and Warranties</u>. The representations and warranties made herein will be correct in all material respects on and as of the Closing Date with the same force and effect as though they had been made on the Closing Date. They shall survive the Closing for a period of five (5) years; provided, however, the representations and warranties made by Irene shall survive the Closing Date for a period not to exceed the first to occur of: (i) five (5) years or (ii) six months after the entry of a dismissal, with prejudice, of the Roberts Matter, as defined above. To the extent Buyer has any actual knowlege at or before the Closing of the material inaccuracy of any representation or warranty of Seller, Steve and/or Irene, Buyer shall not be able to rely upon any such representation or warranty.

**13.14.** <u>Correctness of Representations and Warranties</u>. Subject to the limitations as to Irene, set forth in the introduction to Paragraph 13, none of Seller's, Irene's or Steve's representations and warranties contains or will contain on the Closing Date any untrue statement of a material fact. Nor will they omit a material fact necessary to make a statement not misleading. This includes, without limitation, any in an Exhibit or in any statement or certificate furnished or to be furnished by Seller, Irene or Steve pursuant to this Agreement or in connection with this transaction.

**13.15.** <u>Recourse for Breach of Representation or Warranty</u>. Pursuant to the terms and conditions set forth below, in the event of a breach of any or all of the representations and/or warranties made in this Agreement by Seller, Irene and/or Steve, Buyer shall have the right to offset against the amounts due Seller or Irene under this Agreement or any agreement or instrument attached as an Exhibit hereto, the actual damages suffered or reasonably anticipated as a result of the alleged breach. Provided the amount of an offset exceeds $5,000, upon making such offset, Buyer shall, within thirty (30) days, submit the matter of the the alleged under this subparagraph to binding arbitration as to the issues of the the alleged breach and the amount of the offset and the propriety of such offset. The parties shall conduct such arbitration pursuant to the attached <u>EXHIBIT AAAA</u>. As to offsets less than $5,000, Seller and/or Irene shall have the right to submit said offset claim to arbitration or otherwise proceed by way of judicial action or any other remedy pursuant to this Agreement and California law. Buyers right to offset against Irene other than pursuant to subparagraph 8.3, above, shall be limited to

Buyer    Seller

17

101201-5.buy




liability resulting from a material breach of a representation or warranty made by Irene, it being acknowledged that the representations and warranties made by Irene in this Agreement are made only to the extent of her actual knowledge. Recourse with respect to such a breach by Irene shall be limited to the extent of all amounts received by Irene or to be received by Irene pursuant to this Agreement and any ancillary agreement attached hereto as an Exhibit. Buyer shall offset first against all amounts due to Seller and then to any amount due to Irene pursuant to this Agreement and any ancillary agreement attached hereto as an Exhibit. To the extent Irene has an obligation to Buyer for indemnification for the Roberts Matter, the offset shall be governed by subparagraph 8.3 hereof.

14.   THE CONDUCT OF BUSINESS PENDING CLOSING.

14.1.   Normal Conduct of Business. Seller covenants  that, from the Effective Date to the Closing Date, each shall use their best efforts to preserve substantially intact Seller's business organization, keep available the services of Seller's present officers and employees and preserve Seller's present relationships with persons having significant business relations therewith, preserve the good will of Seller's customers, employees and suppliers and shall conduct and operate the Seller's Business only in the ordinary course. Without limiting the generality of the foregoing, the Seller shall not without the prior written consent of Buyer, except as required by this Agreement:

(i)  borrow or agree to borrow any funds, except in the ordinary course of business pursuant to lines of credit or similar arrangements existing as of the date hereof;

(ii)  sell, exchange, or otherwise dispose of, or cause or suffer the sale, exchange or other disposition of any part of the Assets, except in the ordinary course of business and at prices and terms consistent with those historically practiced by the Sellers;

(iii)  mortgage, pledge or subject (or suffer to be subjected) any of the Assets to any lien, charge or encumbrance;

(iv)  create any receivable (including, without limitation, accounts receivable, notes, advances and receivables due from affiliates) except in arms-length transactions in the ordinary course of business and at prices and terms consistent with those historically practiced by the Sellers ;

(v)  sell, assign, license or transfer any right, title or interest in or to, or disclose to any third party any information regarding, any trade name, trademark, service mark, copyright, application for any of the foregoing or other intangible assets used exclusively by it.

Buyer   Seller

101201-5.buy                                18



14.2.    Prohibited Acts. Seller, Steve and/or Irene will not, without Buyer's prior written consent:

14.2.1.  enter into any contracts or commitments which would obligate Buyer after the Closing Date;

14.2.2.  sell or agree to sell, assign or transfer or encumber all or any interest in the Business, or the Assets, other than in the ordinary course of business;

14.2.3.  suffer or permit the creation of any claim, lien, charge, or other encumbrance on the Business or the Assets; or

14.2.4.  (i) negotiate with or conclude an agreement with any other party for the sale of the capital stock or the assets of the Seller or the merger or consolidation of the Seller with any other entity, on or prior to the earlier of the Closing Date and the date on which this Agreement is terminated by mutual agreement of the Parties hereto, or (ii) enter into any discussions with any other party that may prejudice in any way the consummation of the transactions contemplated hereby.

14.3.    Preservation of Goodwill. Seller will preserve for Buyer the Business' goodwill. This includes, without limitation, goodwill of suppliers, customers and others having business relations with the Business.

14.4.    Maintenance of Assets. Seller will continue to operate and maintain the Business and all tangible assets included in the Assets in substantially the same manner in which they were being operated and maintained on the date of this Agreement. This will be done to maintain the Business and the Assets in operable condition on the Closing Date.

14.5.    Consents. The Parties agree to use their best efforts to obtain the required consents and agreements of third parties.

14.6.    Maintenance of Insurance. Seller will maintain in full force and effect, up to and including the Closing Date, all policies of Insurance, other than health or life policies, as set forth on EXHIBIT O, ("Insurance Policies"), or binders replacing any Insurance Policies, which have or will expire before the Closing Date.

14.7.    Right to Inspect. Seller, Steve and Irene grant to Buyer and its representatives (including, its legal counsel and accountants) full access during normal business hours to all of the premises, files, books, records, contracts, officers, employees, customers, suppliers, accountants, lawyers and facilities of Seller

Buyer    Seller

19

 

and cause the officers of Seller to furnish such financial and operating data and other information with respect to Seller's Business as Buyer shall from time to time reasonably request, provided, however, that any such investigation shall be conducted with reasonable advance notice at a mutually agreed upon time and date and in such manner as not to interfere unreasonably with the operation of Seller's Business. If, as a result of such investigation, Buyer becomes aware of information prior to the Closing which would make any representation or warranty untrue, Buyer shall notify Seller prior to the Closing, but Buyer shall not have any liability for failure to so notify Seller. During such investigation, Buyer and its representatives shall have the right to make copies of, or excerpts from, such files, books, records and contracts as they may deem advisable.

14.8. Preserve Accuracy of Representations and Warranties of Seller. Between the Effective Date and the Closing Date, Seller, Steve and/or Irene shall refrain from taking, without the prior written consent of Buyer, any action which would render any of the representations or warranties set forth in Article 13 materially inaccurate as of the Closing Date. Seller, Steve and/or Irene shall notify Buyer promptly of the occurrence of any matter, event or change in circumstances after the date hereof and prior to the Closing Date that would have been required to be disclosed in the Schedules if it had occurred prior to the date hereof, but such notification shall not affect any of Buyer's rights under this Agreement.

## 15. BUYER'S REPRESENTATIONS AND WARRANTIES.

Buyer represents and warrants to Seller as follows:

15.1. Standing. Whether Buyer is a corporation or a limited partnership, it shall be duly organized, validly existing and in good standing under California law. Buyer will have the power to conduct its business and shall be entitled to carry on the Business and to own, lease, and operate properties used in connection with the Business.

15.2. Authorization. Buyer's performance of this Agreement shall have been duly authorized by all necessary corporate or partnership action. It will not violate Buyer's Articles of Incorporation, Bylaws or partnership agreement. Buyer's execution, delivery and performance of this Agreement will not violate the provisions of law or of any agreement or other instrument to which Buyer is a party or by which it is bound. Nor will it be in conflict with, result in a breach of, or constitute (with or without notice and with or without the lapse of time) a default under an agreement or other instrument.

15.3. Binding Obligation. Buyer has duly executed and delivered this Agreement. It constitutes Buyer's legal, valid and binding obligations.

Buyer      Seller

Page 51
Exhibit 1

| Jan. 24, 2023 | POST REGISTRATION ACTION MAILED - SEC. 7 | 69471 |
| Jan. 24, 2023 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 69471 |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 04, 2023 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| Dec. 28, 2022 | TEAS SECTION 7 REQUEST RECEIVED | |
| Dec. 10, 2022 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Dec. 10, 2022 | REGISTERED AND RENEWED (THIRD RENEWAL - 10 YRS) | 70132 |
| Dec. 10, 2022 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 70132 |
| Dec. 10, 2022 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 70132 |
| Nov. 02, 2022 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| May 27, 2022 | TEAS SECTION 8 & 9 RECEIVED | |
| Jun. 08, 2021 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| May 30, 2012 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| May 30, 2012 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 66607 |
| May 30, 2012 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 66607 |
| May 24, 2012 | TEAS SECTION 8 & 9 RECEIVED | |
| Feb. 21, 2012 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Mar. 27, 2008 | CASE FILE IN TICRS | |
| Feb. 08, 2002 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Feb. 08, 2002 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Dec. 07, 2001 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | |
| Oct. 15, 1988 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| May 17, 1988 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Jun. 08, 1982 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 16, 1982 | PUBLISHED FOR OPPOSITION | |

**Page 52**
**Exhibit 1**

For assistance with TSDR, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR API DATA:** The TSDR Application Programming Interface (API) has limited availability due to system upgrades. We anticipate full return to service for all API users by the end of the month. In the meantime, if you need to retrieve an office action, you can access it directly from the TSDR documents tab located below. We thank you for your patience while we make these improvements.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | Print |

**Generated on:** This page was generated by TSDR on 2023-04-03 10:11:29 EDT

**Mark:** CHIPPENDALES

# CHIPPENDALES

| | |
|---|---|
| **US Serial Number:** 73305435 | **Application Filing Date:** Apr. 13, 1981 |
| **US Registration Number:** 1197438 | **Registration Date:** Jun. 08, 1982 |
| **Register:** Principal | |
| **Mark Type:** Service Mark | |

**TM5 Common Status Descriptor:**



LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Offic

**Status:** The registration has been renewed.

**Status Date:** Dec. 10, 2022

**Publication Date:** Mar. 16, 1982

## Mark Information

## Goods and Services

## Basis Information (Case Level)

## Current Owner(s) Information

## Attorney/Correspondence Information

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Mar. 07, 2023 | OTQR WITHDRAWAL FROM PUBLICATION | 67657 |
| Jan. 26, 2023 | AMENDMENT UNDER SECTION 7 – PROCESSED | 69471 |
| Jan. 25, 2023 | TEAS RESPONSE TO OFFICE ACTION-POST REG RECEIVED | |

SANTA MONICA, CA 90404

**Domestic Representative - Not Found**

## Assignment 8 of 8

| | |
|---|---|
| **Conveyance:** | CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026. |
| **Reel/Frame:** | 7894/0634                                 **Pages:** 47 |
| **Date Recorded:** | Nov. 22, 2022 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | EASEBE ENTERPRISES, INC | **Execution Date:** | Jun. 13, 2022 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | No Place Where Orga |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | EASEBE ENTERPRISES, INC | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** | 818 7TH ST LOS ANGELES, UNITED STATES 90017 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | JESSE BANERJEE |
| **Correspondent Address:** | 1937 22ND STREET APT 4 SANTA MONICA, CA 90404 |

**Domestic Representative - Not Found**

## Proceedings - Click to Load

| | Reel/Frame: | 3197/0574 | | Pages: | 8 |

|                        | Date Recorded: | Nov. 21, 2005 |
| Supporting Documents: | assignment-tm-3197-0574.pdf |

**Assignor**

| | Name: | **BANERJEE, IRENE (BY HELEN MARYMAN, EXECUTRIX)** | Execution Date: | Apr. 22, 2005 |
| | Legal Entity Type: | ESTATE | State or Country Where Organized: | CALIFORNIA |

**Assignee**

| | Name: | **CLP TOUR, LTD.** |
| | Legal Entity Type: | LIMITED PARTNERSHIP | State or Country Where Organized: | CALIFORNIA |
| | Address: | C/O LAW OFFICES OF W. GARY KURTZ<br>2625 TOWNSGATE ROAD, SUITE 330<br>WESTLAKE VILLAGE, CALIFORNIA 91361 |

**Correspondent**

| Correspondent Name: | GEOFFREY I. LANDAU |
| Correspondent Address: | LACKENBACH SIEGEL, LLP<br>ONE CHASE ROAD<br>SCARSDALE, NY 10583 |

**Domestic Representative - Not Found**

## Assignment 7 of 8

| | Conveyance: | CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026. |
| | Reel/Frame: | 7836/0440 | | Pages: | 47 |
| | Date Recorded: | Oct. 28, 2022 |
| Supporting Documents: | assignment-tm-7836-0440.pdf |

**Assignor**

| | Name: | **EASEBE ENTERPRISES INC.** | Execution Date: | Jun. 13, 2022 |
| | Legal Entity Type: | CORPORATION | State or Country Where Organized: | CALIFORNIA |

**Assignee**

| | Name: | **EASEBE ENTERPRISES INC.** |
| | Legal Entity Type: | CORPORATION | State or Country Where Organized: | CALIFORNIA |
| | Address: | 818 7TH ST<br>LOS ANGELES, CALIFORNIA 90017 |

**Correspondent**

| Correspondent Name: | JESSE BANERJEE |
| Correspondent Address: | 1937 22ND STREET<br>APT 4 |

| | Name: | **CLP TOUR, LTD.** | Execution Date: | Mar. 30, 2000 |
| --- | --- | --- | --- | --- |

Legal Entity Type: LIMITED PARTNERSHIP

State or Country Where Organized: No Place Where Orga

**Assignee**

Name: **CHIPPENDALES USA, LLC**

Legal Entity Type: CORPORATION

State or Country Where Organized: DELAWARE

Address: P.O. BOX 20240
GREELEY SQUARE STATION
NEW YORK, NEW YORK 10001

**Correspondent**

Correspondent Name: LACKENBACH SIEGEL

Correspondent Address: HOWARD N. ARONSON
ONE CHASE ROAD
SCARSDALE, NY 10583

**Domestic Representative - Not Found**

### Assignment 5 of 8

Conveyance: RELEASE BY SECURED PARTY

Reel/Frame: **3197/0529**                                    Pages: 8

Date Recorded: Nov. 21, 2005

Supporting Documents: **assignment-tm-3197-0529.pdf**

**Assignor**

Name: **EASEBE ENTERPRISES, INC.**

Execution Date: Apr. 22, 2005

Legal Entity Type: CORPORATION

State or Country Where Organized: CALIFORNIA

**Assignee**

Name: **CLP TOUR, LTD.**

Legal Entity Type: LIMITED PARTNERSHIP

State or Country Where Organized: CALIFORNIA

Address: C/O LAW OFFICES OF W. GARY KURTZ
2625 TOWNSGATE ROAD, SUITE 330
WESTLAKE VILLAGE, CALIFORNIA 91361

**Correspondent**

Correspondent Name: GEOFFREY I. LANDAU

Correspondent Address: LACKENBACH SIEGEL, LLP
ONE CHASE ROAD
SCARSDALE, NY 10583

**Domestic Representative - Not Found**

### Assignment 6 of 8

Conveyance: RELEASE BY SECURED PARTY

| Legal Entity Type: | INDIVIDUAL | Citizenship: | UNITED STATES |

Address: SUITE 500
9107 WILSHIRE BOULEVARD
BEVERLY HILLS, CALIFORNIA 90210

**Correspondent**

Correspondent Name: THOMAS I. ROZSA, ESQ.

Correspondent Address: SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

## Assignment 3 of 8

| | |
|---|---|
| Conveyance: | SECURITY INTEREST |
| Reel/Frame: | **1286/0079** |    Pages: 6 |
| Date Recorded: | Jan. 30, 1995 |
| Supporting Documents: | No Supporting Documents Available |

**Assignor**

Name: **CLP TOUR, LTD.**                    Execution Date: Nov. 10, 1994

Legal Entity Type: LIMITED PARTNERSHIP      State or Country Where Organized: CALIFORNIA

**Assignee**

Name: **EASEBE ENTERPRISES, INC.**

Legal Entity Type: CORPORATION              State or Country Where Organized: CALIFORNIA

Address: SUITE 500
9107 WILSHIRE BOULEVARD
BEVERLY HILLS, CALIFORNIA 90210

**Correspondent**

Correspondent Name: THOMAS I. ROZSA, ESQ.

Correspondent Address: SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

## Assignment 4 of 8

| | |
|---|---|
| Conveyance: | ASSIGNS THE ENTIRE INTEREST |
| Reel/Frame: | **2112/0521** |    Pages: 3 |
| Date Recorded: | Jul. 07, 2000 |
| Supporting Documents: | **assignment-tm-2112-0521.pdf** |

**Assignor**

## TM Staff and Location Information

## Assignment Abstract Of Title Information

| Summary | | Convey |
|---|---|---|
| **Total Assignments:** 8 | **Registrant:** Easebe Enterprises In | |

### Assignment 1 of 8

| | |
|---|---|
| **Conveyance:** | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |
| **Reel/Frame:** | **1286/0026** |
| **Date Recorded:** | Jan. 26, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Pages:** 3

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | **EASEBE ENTERPRISES INC.** | **Execution Date:** | Nov. 04, 1994 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | **CLP TOUR LTD.** | **Execution Date:** | |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** | SUITE 305 16530 VENTURA BLVD. ENCINO, CALIFORNIA 91436 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | THOMAS I. ROZSA, ESQ. |
| **Correspondent Address:** | SUITE 1081 IMPERIAL BANK BLDG. 15303 VENTURA BOULEVARD SHERMAN OAKS, CA 91403 |

**Domestic Representative - Not Found**

### Assignment 2 of 8

| | |
|---|---|
| **Conveyance:** | SECURITY INTEREST |
| **Reel/Frame:** | **1286/0071** |
| **Date Recorded:** | Jan. 30, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Pages:** 6

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | **CLP TOUR, LTD.** | **Execution Date:** | Nov. 10, 1994 |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | |
|---|---|
| **Name:** | **BANERJEE, IRENE** |

| Jan. 24, 2023 | POST REGISTRATION ACTION MAILED - SEC. 7 | 69471 |
| Jan. 24, 2023 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 69471 |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 04, 2023 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| Dec. 28, 2022 | TEAS SECTION 7 REQUEST RECEIVED | |
| Dec. 10, 2022 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Dec. 10, 2022 | REGISTERED AND RENEWED (THIRD RENEWAL - 10 YRS) | 70132 |
| Dec. 10, 2022 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 70132 |
| Dec. 10, 2022 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 70132 |
| Nov. 02, 2022 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| May 27, 2022 | TEAS SECTION 8 & 9 RECEIVED | |
| Jun. 08, 2021 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| May 30, 2012 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| May 30, 2012 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 66607 |
| May 30, 2012 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 66607 |
| May 24, 2012 | TEAS SECTION 8 & 9 RECEIVED | |
| Feb. 21, 2012 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Mar. 27, 2008 | CASE FILE IN TICRS | |
| Feb. 08, 2002 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Feb. 08, 2002 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Dec. 07, 2001 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | |
| Oct. 15, 1988 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| May 17, 1988 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Jun. 08, 1982 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 16, 1982 | PUBLISHED FOR OPPOSITION | |

**Page 60**
**Exhibit 1**

**For assistance with TSDR**, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR API DATA:** The TSDR Application Programming Interface (API) has limited availability due to system upgrades. We anticipate full return to service for all API users by the end of the month. In the meantime, if you need to retrieve an office action, you can access it directly from the TSDR documents tab located below. We thank you for your patience while we make these improvements.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | | Print |

**Generated on:** This page was generated by TSDR on 2023-04-03 10:11:29 EDT

**Mark:** CHIPPENDALES

# CHIPPENDALES

| | | | |
|---|---|---|---|
| **US Serial Number:** | 73305435 | **Application Filing Date:** | Apr. 13, 1981 |
| **US Registration Number:** | 1197438 | **Registration Date:** | Jun. 08, 1982 |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |

**TM5 Common Status Descriptor:**



LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Offic

**Status:** The registration has been renewed.

**Status Date:** Dec. 10, 2022

**Publication Date:** Mar. 16, 1982

## Mark Information

## Goods and Services

## Basis Information (Case Level)

## Current Owner(s) Information

## Attorney/Correspondence Information

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Mar. 07, 2023 | OTQR WITHDRAWAL FROM PUBLICATION | 67657 |
| Jan. 26, 2023 | AMENDMENT UNDER SECTION 7 – PROCESSED | 69471 |
| Jan. 25, 2023 | TEAS RESPONSE TO OFFICE ACTION-POST REG RECEIVED | |

# EXHIBIT "A"

| | |
|---|---|
| **Legal Entity Type:** INDIVIDUAL | **Citizenship:** UNITED STATES |
| **Address:** SUITE 500<br>9107 WILSHIRE BOULEVARD<br>BEVERLY HILLS, CALIFORNIA 90210 | |

**Correspondent**

**Correspondent Name:** THOMAS I. ROZSA, ESQ.

**Correspondent Address:** SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

## Assignment 3 of 8

| | | |
|---|---|---|
| **Conveyance:** SECURITY INTEREST | | |
| **Reel/Frame:** 1286/0079 | **Pages:** | 6 |
| **Date Recorded:** Jan. 30, 1995 | | |
| **Supporting Documents:** No Supporting Documents Available | | |

**Assignor**

| | | |
|---|---|---|
| **Name:** CLP TOUR, LTD. | **Execution Date:** | Nov. 10, 1994 |
| **Legal Entity Type:** LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | |
|---|---|---|
| **Name:** EASEBE ENTERPRISES, INC. | | |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** SUITE 500<br>9107 WILSHIRE BOULEVARD<br>BEVERLY HILLS, CALIFORNIA 90210 | | |

**Correspondent**

**Correspondent Name:** THOMAS I. ROZSA, ESQ.

**Correspondent Address:** SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

## Assignment 4 of 8

| | | |
|---|---|---|
| **Conveyance:** ASSIGNS THE ENTIRE INTEREST | | |
| **Reel/Frame:** 2112/0521 | **Pages:** | 3 |
| **Date Recorded:** Jul. 07, 2000 | | |
| **Supporting Documents:** assignment-tm-2112-0521.pdf | | |

**Assignor**

**Page 64**
**Exhibit 1**

# TM Staff and Location Information

## Assignment Abstract Of Title Information

| Summary | | Convey |
|---|---|---|
| **Total Assignments:** 8 | **Registrant:** Easebe Enterprises In | |

### Assignment 1 of 8

| | |
|---|---|
| **Conveyance:** | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |
| **Reel/Frame:** | **1286/0026**          **Pages:** 3 |
| **Date Recorded:** | Jan. 26, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | **EASEBE ENTERPRISES INC.** | **Execution Date:** | Nov. 04, 1994 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | **CLP TOUR LTD.** | | |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** | SUITE 305 16530 VENTURA BLVD. ENCINO, CALIFORNIA 91436 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | THOMAS I. ROZSA, ESQ. |
| **Correspondent Address:** | SUITE 1081 IMPERIAL BANK BLDG. 15303 VENTURA BOULEVARD SHERMAN OAKS, CA 91403 |

**Domestic Representative - Not Found**

### Assignment 2 of 8

| | |
|---|---|
| **Conveyance:** | SECURITY INTEREST |
| **Reel/Frame:** | **1286/0071**          **Pages:** 6 |
| **Date Recorded:** | Jan. 30, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | **CLP TOUR, LTD.** | **Execution Date:** | Nov. 10, 1994 |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | |
|---|---|
| **Name:** | **BANERJEE, IRENE** |



### 22.2.2. Mail.

This paragraph applies if the notice, demand or other communication is by mail. Service shall be conclusively deemed given seventy-two (72) hours after its deposit in the United States mail, addressed to the party to whom notice, demand or other communication is to be given.

### 22.3. Initial Addresses.

Seller:
Easebe, Inc.
c/o David Gernsbacher, Esq.
9107 Wilshire Blvd.
Suite 500
Beverly Hills, CA 90210

Irene:
Irene Banerjee
151 Napoleon Street
Playa Del Rey, CA 90293

Copy to:
David Gernsbacher, Esq.
9107 Wilshire Blvd.
Suite 500
Beverly Hills, CA 90210

Steve:
Steve Banerjee
c/o David Gernsbacher, Esq.
9107 Wilshire Blvd.
Suite 500
Beverly Hills, CA 90210

Buyer:
CLP Tour, Ltd.,
C/O Chip LP, Inc.
16530 Ventura Blvd.,
Suite 355
Encino, CA 91436

Copy to:
Ben Frankel, C.P.A.
Frankel, Lodgen, Lacher, Golditch
& Sardi
16530 Ventura Blvd.
Suite 305
Encino, CA 91436

Buyer    Seller

101201-5.buy

24



## 19. RECORDS.

Buyer shall have the right to examine, use and make excerpts from any corporate minute books, books of account and other records and documents of Seller which are not included in the Assets, and Seller shall not destroy any such books or records without Buyer's consent for a period of seven years after the Closing. Seller shall have the right to examine, use and make excerpts from any books of account and other records and documents which are transferred to Buyer pursuant to this Agreement for any purposes connected with or relating to any event occurring prior to the Closing Date.

## 20. BROKERAGE.

Other than the commission to be paid by Seller to Irene Banerjee in the amount of $200,000 from the cash consideration received by Seller hereunder, the Parties represents and warrants to each other that they have done nothing to create liability to pay a commission or compensation in the nature of a finder's fee or similar payment to any broker or other person. Accordingly, they indemnify and save each other harmless from and against any and all claims, liabilities, costs, including, without limitation, attorney fees, or obligations with respect to brokerage or finder's fees or commissions claimed due to this Agreement.

## 21. SALES TAX.

Seller shall pay any sales tax related to this transaction and indemnify Buyer therefore in the manner set forth in subparagraph 13.15.

## 22. NOTICES.

22.1. Written. Notices, demands or other communications required or desired to be given under this Agreement by any party shall be in writing.

22.2. Service. They shall be validly given or made to another party if served either personally or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested.

22.2.1. Personal.

This paragraph applies if notice, demand or other communication is served personally. Service shall be conclusively deemed made at the time of personal service.

Buyer     Seller

101201-5.buy

23

16.6. <u>Representations' and Warranties' Accuracy</u>. Seller's representations and warranties shall be true and correct on and as of the Closing Date, with the same force and effect as though they had been made on the Closing Date. Seller shall certify that in writing to Buyer.

16.7. <u>Delivery of Governmental Approval</u>. Buyer shall have received the Governmental Approval, as provided herein.

16.8. <u>Delivery of Documents and Items</u>. Seller shall have delivered to Buyer all of the documents required by this Agreement to be delivered by Seller, Steve and/or Irene.

17. <u>CONDITIONS TO SELLER'S OBLIGATIONS</u>.

Seller's obligations are, at its option, subject to the satisfaction on or before the Closing Date of the following conditions:

17.1. <u>Completion of Conditions</u>. Buyer will comply with all this Agreement's terms, covenants and conditions on or before the Closing Date.

17.2. <u>Delivery of Documents; Payment of Purchase Price</u>. Payment of the Purchase Price shall have been properly made.

17.3. <u>Buyer's Resolution</u>. On or before the Closing Date, Buyer shall have delivered to Seller a copy, certified by (i) Buyer's Secretary, of its Board of Directors' resolution or (ii) Buyer's General Partner authorizing this Agreement's execution and delivery to Seller.

18. <u>INSTRUMENTS OF TRANSFER AND ASSUMPTION</u>.

The sale, conveyance, assignment, transfer and delivery to Buyer of the Assets shall be effected by such deeds, bills of sale, assignments, drafts, checks and other instruments of transfer as Buyer shall reasonably request and which shall be effective, in the opinion of Buyer's counsel, to vest in Buyer all of Seller's right, title and interest in and to the Assets. Seller shall take all actions as are necessary to put Purchaser in actual possession and control of the Assets. The assumption of Seller's obligations and liabilities which Buyer has agreed to assume pursuant to this Agreement shall be effected by such instruments of assumption as Seller shall reasonably request and which shall be effective, in the opinion of Seller's counsel, to cause the assumption by Buyer of all of such obligations and liabilities.

Buyer    Seller

101201-3.buy

22

 

**15.4.** <u>Representations' and Warranties' Duration</u>. Representations and warranties will be correct in all material respects on and as of the Closing Date with the same force and effect as though they had been made on the Closing Date.

**15.5.** <u>Correctness of Representations and Warranties</u>. None of Buyer's representations or warranties, statements or certificates contains or will contain on the Closing Date an untrue statement or material fact.

**16.** <u>CONDITIONS TO BUYER'S OBLIGATIONS</u>.

Buyer's obligations to acquire the Assets, enter into the ancillary agreements provided for in this Agreement, complete the terms and conditions of this Agreement are subject to the satisfaction or waiver by Buyer, in writing, on or before the Closing Date of the conditions listed below. They are for Buyer's benefit and only Buyer can insist on their occurrence as a precondition to the Buyer's obligations under this Agreement.

**16.1.** <u>Officer's and Stockholders' Certificate</u>. Buyer shall have received a certificate executed by the Chairman, President or any Vice President of Seller and by each of Steve and Irene, with respect to the representations and warranties set forth in this Agreement and the due performance and satisfaction in all material respects of the obligations and conditions hereunder to be performed and satisfied by Seller, Steve and/or Irene.

**16.2.** <u>Consents and Waivers</u>. Buyer shall have received all consents and waivers to the transactions contemplated hereby required under all agreements, mortgages, indentures, contracts, licenses, franchises, permits, leases or other instruments, laws, rules or regulations applicable to Seller which are necessary to consummate the transactions contemplated hereby and to preserve Seller's Business.

**16.3.** <u>Licenses and Permits</u>. Buyer shall have received such licenses and permits as may be required to enable Buyer to commence the conduct of Seller's Business on the Closing Date.

**16.4.** <u>Corporate Action</u>. Buyer shall have received copies of the resolutions of Seller's Board of Directors and stockholders, certified by its Secretary, authorizing and approving the execution and delivery of this Agreement and the consummation of the transactions contemplated hereunder.

**16.5.** <u>Completion of Conditions</u>. Seller, Steve and Irene shall have complied and be in compliance at the Closing with the terms and conditions of this Agreement. Seller, Steve and Irene shall certify that in writing to Buyer.

_____  _____
Buyer          Seller



## CLP TOUR, LTD. - EASEBE ENTERPRISES, INC.
## PURCHASE AGREEMENT

THIS AGREEMENT is made September *Oct* 5, 1994, ("Effective Date") by and between CLP TOUR, Ltd., a California limited partnership ("Buyer"), Easebe Enterprises, Inc., a California corporation ("Seller"), STEVE BANERJEE, an individual ("Steve") and IRENE BANERJEE, an individual ("Irene"). Buyer, Seller, Steve and Irene may sometimes hereinafter be referred to individually as a "Party" or collectively as the "Parties."

### RECITALS

A.    Seller is a California corporation.  EXHIBIT A lists each of the shareholders and their respective ownership interests.

B.    Seller owns one hundred percent (100%) of the assets of the male dance entertainment business and related activities commonly known as "CHIPPENDALES" (hereinafter the "Business"). The Business is supervised from the headquarters at 2115 Pico Blvd., Santa Monica, California 90405 (the "Property"). A copy of the lease with respect to such Property is attached hereto as EXHIBIT B.

C.    Seller:

      (i)    owns certain intellectual property, including, without limitation, all items set forth on the schedule attached hereto as EXHIBIT C ("Intellectual Property");

      (ii)    owns certain displays, furniture, fixtures, equipment, including, without limitation, office machinery, tools, signs, and lighting fixtures (collectively referred to as the "Equipment"), a schedule of which is attached as EXHIBIT D. The Equipment is used in the Business;

      (iii)    owns certain inventory used in the Business (the "Inventory"), a schedule of which is attached as EXHIBIT E;

      (iv)    owns supplies used in the Business including, stationery, office supplies, forms, brochures (the "Supplies");

Buyer    Seller

101201-5.buy                     1

 

(v)     owns certain leasehold improvements located in the Property (the "Leasehold Improvements") described in EXHIBIT F;

(vi)    owns certain books and records pertaining to Seller's Business, including, without limitation, credit, payroll, personnel tax and accounting books, records and files (the "Business Records");

(vii)   any and all contract and beneficial rights (including all existing and prospective rights) with respect to ongoing contracts for Chippendales dance troupes and the rights to payment therefrom, whether in the United States, the United Kingdom or elsewhere, which shall include the right to receive payment therefrom after the Closing Date (the "Troupe Rights"); and

(viii)  certain rights and obligations with respect to that contract by and between Propaganda productions and Seller, ("Propaganda Agreement"), a copy of which is attached as EXHIBIT S, which Exhibit shall also set forth the rights and obligations of the Buyer and Seller with respect thereto.

D.      Buyer wishes to buy from Seller and Seller wants to sell to Buyer all Seller's right, title and interest in and to all of the assets used in conjunction with the Business, including, without limitation, all of the Intellectual Property, Equipment, Inventory, Supplies, Leasehold Improvements, Business Records, and Troupe Rights, all of which is sometimes collectively referred to as the "Assets," on the terms and conditions set forth in this Agreement. Buyer shall be allowed the right to occupy the Property by Seller for a period of ninety (90) days for $13,050, payable in three equal installments of four thousand three hundred fifty dollars ($4,350) each, beginning on the first day Buyer takes occupancy of the Property and then thirty (30) days and sixty (60) days after Buyer takes occupancy of the Property.

E.      Buyer, Seller and Irene have already executed an August 11, 1994, letter of intent, and this PURCHASE AGREEMENT is the "definitive agreement" referred to in that letter that results in a "binding commitment".

F.      Irene additionally owns the right to her own life story, including therein, any and all rights which Irene has with respect to the inspiration, planning, creation, preparation, organization and operation of the Business and the male dance entertainment production commonly known as "Chippendales." Irene will

Buyer      Seller



grant Buyer the option to purchase those rights pursuant to the terms and conditions of an agreement of this Agreement. The Parties are aware of the fact that the acquisition of the exclusive life story rights will be of benefit to Buyer in the continued operation and development of the Business.

NOW, THEREFORE, in consideration of the foregoing Recitals and for such other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

1. **PURCHASE OF ASSETS.**

1.1. **Purchased Assets.** Seller shall sell, convey, assign, transfer and deliver to Buyer and Buyer shall buy all Seller's right, title and interest in and to the Assets, which includes, without limit, the following:

> 1.1.1. Intellectual Property;
>
> 1.1.2. Equipment;
>
> 1.1.3. Inventory;
>
> 1.1.4. Supplies;
>
> 1.1.5. Leasehold Improvements;
>
> 1.1.6. Business Records;
>
> 1.1.7. Troupe Rights; and
>
> 1.1.8. Propaganda Agreement, subject to EXHIBIT S.

1.2. **When Transferred.** The Assets shall be transferred once the terms and conditions set forth in this Agreement are either satisfied or waived, which date is referred to as the "Closing Date," as set forth herein and shall be the date upon which the "Closing," as set forth herein, occurs.

1.3. **Free And Clear.** The Assets shall be delivered to Buyer free and clear of any claim, liability, lien, pledge or encumbrance.

1.4. **Leased Equipment.** In addition to the Assets, Seller leases those assets listed on EXHIBIT J. Seller shall provide Buyer with true and correct legible copies of such leases and Buyer shall have the right for a period of sixty (60) days after the Closing Date to assume any of those leases, if possible. Seller agrees not

Buyer    Seller


to cancel or cause such leases to be terminated prior to the expiration of such period.

2.   PURCHASE PRICE.

The purchase price for the Assets shall be One Million Eight Hundred Thousand Dollars ($1,800,000) ("Purchase Price"). The allocation of the Purchase Price to the Assets is set forth on __EXHIBIT G__ and has been agreed to by the Parties.

3.   PAYMENT OF PURCHASE PRICE.

Upon the satisfaction or waiver by Buyer of all conditions precedent to Buyer's obligations hereunder, Buyer, or Buyer's assignee, shall pay the Purchase Price as follows:

3.1.   Promissory Note. At the Closing, Buyer shall execute and deliver to Seller its promissory note, in the form attached hereto as __EXHIBIT H__, in the original principal amount equal to One Million Dollars ($1,000,000) less the "Reduction," as set forth in subparagraph 9.5. The Promissory Note shall be secured by that certain Security Agreement, attached hereto as __EXHIBIT T__.

3.2.   Balance.

The balance of the Purchase Price, as adjusted by subparagraph 9.6, ("Balance"), less the amount set forth in subparagraph 7.3, shall be paid in cash or check to Seller, upon the receipt by Buyer of the "Governmental Approval," as defined herein.

4.   INTELLECTUAL PROPERTY.

Buyer is entering into this transaction specifically to acquire all intellectual property used in the Business owned by Seller. This property includes, but is not limited to:

4.1.   trademarks,

4.2.   trade names, including but not limited to fictitious business names and corporate names, and specifically including "Chippendales,"

4.3.   service marks,

4.4.   copyright applications and registered copyrights,

Buyer   Seller

101201-5.buy

4

 

4.5.   design patents,

4.6.   utility patents,

4.7.   trade dress on all items used in conjunction with the Chippendales products,

4.8.   the assignment of all model releases for any models depicted in any advertising or other promotion of Chippendales,

4.9.   slogans,

4.10.  telephone numbers and listings in telephone directories,

4.11.  pictures,

4.12.  calendars,

4.13.  photos,

4.14.  logos,

4.15.  brochures,

4.16.  methods of operation,

4.17.  customer lists,

4.18.  film elements in all stages of production, including the Propaganda Agreement, subject to EXHIBIT S,

4.19.  video cassettes, including the Propaganda Agreement, subject to EXHIBIT S,

4.20.  video tapes, including the Propaganda Agreement, subject to EXHIBIT S,

4.21.  software in all tangible forms, including but not limited to, printouts, diskettes, tape and CD-Rom,

4.22.  all goodwill owned by or associated with Seller and suitable for exploitation on all media throughout the world and in perpetuity whether developed, licensed or in the development or predevelopment stage;

Buyer   Seller

5

101201-5.buy

 

4.23.   all inventories of merchandise held for sale.

## 5.   ADDITIONAL MATTERS.

5.1.   Covenant Not To Compete. Irene, Steve, Seller and the officers, directors and any other shareholders of Seller shall each execute individual covenants not to compete, in the form attached hereto as EXHIBIT I, (collectively the "Covenants Not To Compete"). The Covenants Not To Compete shall generally prohibit participating, directly or indirectly, as a principal, shareholder, partner, lender, investor, advisor, employee, consultant, or independent contractor, with or without compensation or consideration of any form, in any entity and/or business engaged in any business activities similar in nature and scope to the Business in the territory set forth in EXHIBIT I for a period of five (5) years from the Closing Date.

5.2.   Equity Interest. As additional consideration for the Covenant Not To Compete with Irene, Irene shall receive a fifteen percent (15%) interest as a Class "B" Limited Partner in Buyer (the "Equity Interest"), pursuant to the terms and conditions of that certain Agreement of Limited Partnership, a copy of which agreement is attached hereto as EXHIBIT R.

5.3.   Consulting Agreement. Buyer and Irene shall enter into a consulting agreement, in the form attached hereto as EXHIBIT K, (the "Consulting Agreement") which shall generally provide for Buyer to pay Irene a consulting fee of $100,000 per year for 25 years. The first payment will be due on September 30, 1995, and continue thereafter on September 30 of the next twenty-four successive years. The Consulting Agreement shall be secured by the terms of that certain Security Agreement, in the form attached hereto as EXHIBIT U.

5.4.   Right To Reacquire Irene's Equity Interest. Buyer, or Buyer's assignee, as the case may be, shall have the right to reacquire Irene's Equity Interest, pursuant to the "Repurchase Option Agreement", attached hereto as EXHIBIT L, which shall generally provide:

5.4.1.   Manner Of Exercise. If Buyer chooses to exercise this option, it shall notify Irene in writing of its intent (the "Notice") within five (5) years of the Closing.

5.4.2.   Delivery. Buyer must pay the purchase price to Irene, as set forth below, within thirty (30) business days of her receipt of the Notice.

5.4.3.   Purchase Price and Terms. The purchase price for Irene's Equity Interest shall be five hundred thousand dollars ($500,000), paid as follows: (i) Two Hundred Fifty Thousand Dollars ($250,000) as a down payment, and (ii) a Two Hundred Fifty Thousand Dollar ($250,000) promissory note, interest

Buyer   Seller

Case 1:23-cv-03871-PAEPN Document 1-1 Filed 02/10/23 Page 69 of 120 PageID #:77



only at six percent (6%) payable quarterly, all due and payable on or before fifteen (15) months thereafter or, at obligor's election, One Hundred Twenty Five Thousand Dollars ($125,000) in fifteen (15) months and One Hundred Twenty Five Thousand Dollars ($125,000) on or before twenty-seven (27) months.

5.4.4. _Security_. Buyer's promissory note is to be secured by the Equity Interest being purchased.

5.4.5. _Conditions_. The obligations of Buyer to (i) execute the Covenants Not To Compete, (ii) grant the Equity Interest, and/or (iii) execute the Consulting Agreement shall be conditioned upon the prior execution and delivery to Buyer on or before the Closing Date of (a) the Repurchase Option Agreement, and (b) the Governmental Approval. Buyer may, on or before the Closing Date, in its discretion, waive any or all of the conditions imposed by this subparagraph 5.4.5.

### 6. CONVEYANCE OF TITLE.

At the Closing title to the Assets shall be conveyed by Seller to Buyer by means of Seller's execution and delivery to Buyer of a Warranty Bill of Sale and Assignment in the form and content of **EXHIBIT M**, or such other method as Buyer may reasonably require.

### 7. ACCOUNTS RECEIVABLE.

7.1. _No Obligation of Buyer_. Buyer shall have no obligation to collect, or enforce collection of, any of Seller's accounts receivable.

7.2. _Receivables_. Seller shall give Buyer, at the Closing, a detailed list of its outstanding accounts receivable as of the Closing Date ("List"). Seller shall have the right to payment for those receivables with respect to which title to the merchandise sold has transferred to the purchasing customer prior to the Closing Date as such items appear on the List and the payments received are so identified. Buyer shall retain payments on all invoices and receivables identified as being for services rendered or products delivered post Closing Date by Buyer. If a payment is made to Buyer by a vendor appearing on the List and to which Buyer has also sold goods or services after the Closing Date but such payment does not clearly indicate for which obligation it is being tendered, Buyer shall pro rate the amount received based upon Buyer's outstanding receivable to such vendor and the receivable of Seller to such vendor created after July 1, 1994 and shown on the List. Buyer agrees to provide Seller with an accounting, beginning sixty (60) days after the Closing Date and each sixty (60) days thereafter, of any receipts by Buyer received after the Closing Date with respect to the items on the List, the payments for which have been clearly noted by the payor as to the particular invoice or receivable for which it made.

Buyer    Seller

101201-5.buy

7

7.3.    Set Aside for Returns. The Parties agree to set aside, as a reduction from the cash to be delivered by Buyer at the Close, pursuant to subparagraph 3.2, the amount of $37,500 for the purpose of accommodating customer refund requests whether for cash or merchandise credit, with respect to those pre-Closing sales made by Seller. Any returns made with respect to post-Closing sales shall be at Buyers cost. To the extent the amount set aside has not been used by Buyer for cash or merchandise credit by May 31, 1995, it shall be returned to the Seller by the Buyer. To the extent cash set aside pursuant to this subparagraph 7.3 is exhausted by cash or merchandise credits, the excess of the total credits shall be offset against payments due under the Promissory Note. Copies of all credits issued pursuant to this subparagraph 7.3 shall be provided to Seller. Seller may contest the credits but such contest is exempt only from that portion of the arbitration provisions of subparagraph 13.15, herein, which require Buyer to initiate arbitration concerning offset claims in excess of $5,000. All other terms of subparagraph 13.15 apply.

8.    LIABILITIES ASSUMED BY BUYER; INDEMNIFICATIONS BY SELLER.

8.1.    Assumed Liabilities. Except for the "Payables," as defined herein, assumed by Buyer pursuant to subparagraph 9.5, or as otherwise expressly assumed in writing and attached hereto as EXHIBIT N, Buyer shall not assume, and shall not be liable for any of Seller's obligations or liabilities, of whatever nature or status.

8.2.    Indemnification By Seller. Except for the matters set forth in subparagraph 8.1, above, Seller shall indemnify, defend, with counsel acceptable to Buyer, and save Buyer and its partners harmless from and against any and all:

8.2.1.    Claims, fines, obligations, demands, actions, suits, losses, costs, penalties, taxes, including, without limitation, sales tax, wages, other compensation or demands of Seller's employees and/or independent contractors, employment withholding and unemployment compensation insurance taxes, union benefits;

8.2.2.    Buyer's expenses, including, without limitation, Buyer's attorneys' fees and costs of litigation and investigation, in connection with or arising out of (i) title to or Seller's ownership of the Assets and (ii) Seller's conduct of the Business before the Closing Date;

8.2.3.    Breach of any representation or warranty;

8.2.4.    The failure of Seller or Irene, to the extent of her actual knowledge, to include a fact in a representation or warranty which is necessary so the representation or warranty is not misleading;

 
Buyer    Seller

[01201-5.buy]                              8

8.2.5. Except for those items paid by Seller on or before the Closing, and for which Seller delivers to Buyer, on or before the Closing Date, proof of such payment, (i) claims due to injury or death to any person, including Seller's customers and their guests; and (ii) claims for Seller's actions or inactions, with respect to events which occurred before the Closing Date, regardless of whether injury or death occurs before or after the Closing Date.

8.3. Roberts Matter Indemnification. Seller and Irene shall indemnify, defend, with counsel acceptable to Buyer, and save Buyer and its partners harmless from and against any and all liability with respect to the "Roberts Matter," as defined herein; provided that Buyer shall have the right to offset against such liability any and all amounts then remaining due to Seller pursuant to this Agreement and then, if necessary, to the amounts then remaining due to Irene pursuant to this Agreement or any ancillary agreement set forth as an Exhibit hereto. To the extent the indemnification is taken against sums due Irene, Buyer shall be entitled to a credit against the sums due Irene in an amount of $1.25 for each dollar expended by Buyer.

9. BULK SALES WAIVER; ADJUSTMENTS FOR ASSUMED PAYABLES.

9.1. Bulk Sales Provisions. The Parties acknowledge that they are each aware of the provisions of California Commercial Code Division 6 and Uniform Commercial Code Article 6 concerning Bulk Sales ("Bulk Sales Provisions"). The Parties have decided not to avail themselves of the procedures set forth therein but to undertake an alternative method by which to provide for the payment of the liabilities otherwise addressed under the Bulk Sales Provisions.

9.2. Waiver of Compliance. Buyer and Seller hereby expressly acknowledge that each is aware of the rights, duties and protections afforded to each under the Bulk Sales Provisions, and each for himself, herself or itself hereby waive such rights, duties and protections.

9.3. List of Payables. Seller has previously delivered to Buyer a list of payables of Seller dated September 27, 1994, as set forth on EXHIBIT AA, and shall immediately deliver to Buyer a revised list of all accounts payable, claims and other liabilities of Seller, including, without limitation, any and all claims or demands made upon Seller, Steve and/or Irene, by the California Employment Development Department, and the California Department of Benefit Payments, showing the name, address, telephone number and amount for each item ("Payables"). That certain legal action brought against Seller by Gerald Roberts ("Roberts Matter") shall not be deemed a "Payable" for the purposes of this Agreement. All Gernsbacher and McGarrigle's fees and expenses, including without limitation, past, current and future fees (reasonably estimated), plus fees for this transaction shall be paid directly to Gernsbacher and McGarrigle out of the initial cash proceeds of

Buyer    Seller

purchase of Easebe's assets without offset or reduction. This payable cannot be negotiated by Buyer and shall be paid out of up front cash to Seller.

9.4.    **Buyer's Efforts.** Subject to the limitations in subparagraph 9.8, below but no earlier than 31 days after the Closing Date, Buyer shall have the right but not the obligation to negotiate reductions of and/or extended payment terms for any or all of the Payables.

9.5.    **Selected Items.** Buyer shall, on or before the Closing Date, select (i) certain of the Payables not due more than 120 days from the Closing Date which Buyer believes to be bona fide items in an amount of $200,000 (the "Reduction") and (ii) any additional amount of bona fide trade payables which Buyer is willing to assume at the Closing ("Assumed Payables"). The Reduction shall be offset against the original principal sum of the Promissory Note at the Closing.

9.6.    **Cash Offset.** Subject to subparagraph 9.8, below, the amount of the Payables, less the Reduction, shall reduce the amount due from Buyer, as set forth in subparagraph 3.2, above.

9.7.    **Escrow Account.** Buyer shall cause an escrow account to be established at Trans World Bank, Encino, California, into which Buyer shall deposit the amount of 50% of the cash offset amount as determined pursuant to subparagraph 9.6.

9.8.    **Seller's Right to Negotiate.** Buyer shall deliver to Seller a list of certain of the Payables with respect to which Seller agrees that it will not negotiate in any fashion, which list is attached as **EXHIBIT AAA** hereto; as Seller and Seller's shareholders acknowledge that such contact after the Effective Date will materially adversely effect the business of Buyer. Seller shall have the right to negotiate with and finalize the payment of any of the remaining Payables for a period of thirty (30) after the Closing Date. If Seller successfully negotiates the resolution of any of the remaining Payables, Buyer shall cause the Escrow to pay such negotiated amount upon the presentation to the escrow and Buyer of the amount to be paid and appropriate documentation providing for the full compromise and settlement of such Payable. The amount of any such discount negotiated by Seller, resulting from the payment of the negotiated Payable during the thirty (30) day period after the Closing Date, shall be distributed to Seller upon the expiration of such thirty (30) day period and the balance remaining in the escrow account shall be returned to the Buyer.

9.9    **Indemnification by Buyer.** Buyer agrees to indemnify, defend, with counsel acceptable to Seller, and save Seller, Irene and Steve harmless from and against any and all claims, actions, suits, losses costs, or other items resulting from the Assumed Payables. Such obligations of Buyer shall be secured prusuant to the provisions of the Security Agreement (Promissory Note).

10.    **SELLER'S EMPLOYEES.**

10.1.    **Termination of Employment.** Seller has represented to Buyer that it shall, before the Closing Date, terminate the employment of all of Seller's

Buyer    Seller



employees, including any who render services at the Property. Therefore, after the Closing Date, Buyer shall be free to engage those persons it desires, in its sole and absolute discretion, on any basis Buyer determines appropriate.

10.2. Payment of Compensation. As of the Closing Date Seller warrants and represents that it has fully compensated all employees for accrued wages, vacation, sick leave time, and any other benefits or compensation claims. Seller and Seller's shareholders, shall jointly and severally indemnify, defend, with counsel acceptable to Buyer, and save Buyer harmless from and against any and all expenses, claims, actions or administrative proceedings with respect to any employee or the termination of any employee of Seller.

11. SELLER'S MISCELLANEOUS OBLIGATIONS.

As of the Closing Date, Seller shall, for Buyer's benefit:

11.1. Certificates of Release. Deliver to Buyer Certificates of Release from the California Franchise Tax Board, California State Board of Equalization, and California Department of Benefit Payments (collectively referred to as the "Certificates of Release"). They must indicate full payment of all taxes due. The Certificates of Release shall be dated not earlier than thirty (30) days before the Closing Date. Seller agrees that in the event it has not received the Certificates of Release by the Closing Date, Buyer may reserve from the amount due to Seller pursuant to subparagraphs 3.2 and 3.1, an amount necessary to provide for the payment of taxes with respect to which the Certificates of Release relate.

11.2. Supersedure Forms. Deliver to Buyer executed telephone supersedure forms.

11.3. Statement of Abandonment. Deliver to Buyer a statement of abandonment of the fictitious business name under which the Seller conducts the Business (the "Statement of Abandonment") in accordance with California Business and Professions Code Section 17920, in a form suitable for filing with the County Clerk in which the Property is located.

11.4. Revocation of Agency Agreements. Deliver to Buyer the written termination, in a form acceptable to Buyer, of any and all agency agreements executed by Seller, other than the agency agreements set forth on EXHIBIT W, with a copy of the agency agreement so terminated, specifically including, without limitation, that agreement between Seller and Bob Green.

Buyer    Seller

101201-3.buy

11

 

**11.5.** Buyer's Right to Waive. Buyer shall have the right to waive any or all of the obligations imposed upon Seller pursuant to this Article 11, but Seller shall continue to be under an obligation to provide the item or items so waived no later than 30 days after the Closing Date.

## 12. THE CLOSING.

**12.1.** The Closing. The "Closing" shall be at the offices of Bruce Givner, A Professional Corporation, 12100 Wilshire Blvd., Suite 445, L.A., CA 90025. It shall occur no later than 5:00 p.m. Friday, September 30, 1994. The Closing will only take place if the conditions set forth herein have been either satisfied or waived by the party for whose benefit any condition exists.

**12.2.** Documents and Items To Be Delivered by Seller on the Closing Date.

On the Closing Date, Seller shall deliver to Buyer the following documents and items, executed (where required by its terms) and in form and substance satisfactory to Buyer's counsel:

12.2.1.  Lease.

12.2.2   Warranty Bill of Sale and Assignment;

12.2.3.  Certificates of Release;

12.2.4.  Supersedure Forms;

12.2.5.  Statement of Abandonment;

12.2.6.  Inventory;

12.2.7.  Supplies;

12.2.8.  Leasehold Improvements;

12.2.9.  Equipment;

12.2.10. Business Records;

12.2.11. Covenants Not To Compete, fully executed by those parties set forth in paragraph 5.1, hereof;

12.2.12. Consulting Agreement, executed by Irene;

Buyer       Seller

12

101201-5.buy

 

12.2.13.   Physical possession of the Property;

12.2.14.   Propaganda Agreement, subject to EXHIBIT S;

12.2.15.   Certificate of Good Standing of Seller from the State of California;

12.2.16.   Certificate signed by Seller's President and Secretary dated as of the Closing Date. This Certificate shall be to the effect that:

    12.2.16.1.   Seller's representations and warranties are correct in all respects on and as of the Closing Date, with the same effect as though they had been made as of the Closing Date;

    12.2.16.2.   Seller has performed in all respects all this Agreement's terms, covenants, and conditions to be performed by Seller on or before the Closing Date;

    12.2.16.3.   Resolutions of Seller's Board of Directors and Shareholders authorizing the execution and delivery to Buyer of this Agreement;

    12.2.16.4.   All necessary governmental and required third party approvals have been obtained to consummate this transaction.

12.2.17.   Certificate signed by Steve and Irene dated as of the Closing Date. This Certificate shall be to the effect that:

    12.2.17.1.   The representations and warranties of Steve and Irene, each for themself, are correct in all respects on and as of the Closing Date, with the same effect as though they had been made as of the Closing Date;

    12.2.17.2.   Steve and Irene have each for themselves performed in all respects

Buyer    Seller

13



all this Agreement's terms, covenants, and conditions to be performed by Seller on or before the Closing Date:

12.2.18.   Resolution approved by all of Seller's outstanding shares authorizing the sale to Buyer of Seller's assets listed in this Agreement, certified by Seller's Secretary.

12.2.19.   All written assignments of all intellectual property, including but not limited to, trademarks, service marks, copyrights and patents in a form recordable in the United States Patent and Trademark Office, in the appropriate office of the Secretary of State for each state trademark and state service mark, and with the Registrar of copyrights respectively.

12.2.20.   All foreign trademarks, service marks, patents and copyrights in form recordable in the appropriate trademark office, patent office, and copyright office of each respective foreign country.

12.2.21.   An abandonment of all fictitious name statements in a form capable of being filed with the appropriate county where such fictitious name statements have been filed so that Buyer can file a new fictitious name statement in the same county.

12.2.22.   The written approval by the United States Government, in a form acceptable to the Buyer, on or before five (5) days after the Effective Date, to the form and content of this Agreement, as such approval relates to the matter presently pending before the forfeiture division of the United States Attorney's Office, Los Angeles, California, (the "Governmental Approval").

12.3.   Agreement Regarding Governmental Approval. Buyer and Seller acknowledge and agree that as a condition to the obligations of Buyer to complete the transaction set forth in this Agreement, Seller shall obtain the Governmental Approval no later than five (5) days after the Effective Date. If Seller has not obtained the Governmental Approval in that time, then Buyer shall thereafter have the right and authority to (i) waive the requirement of the Governmental Approval or (ii) cancel the transaction set forth in this Purchase Agreement.

Buyer    Seller

101201-5.buy

14




12.4.   **Documents To Be Delivered By Buyer at the Closing.**

On the Closing Date, Buyer shall deliver to Seller the following documents, executed by Buyer (where required by its terms):

12.4.1.   the Balance, as adjusted;

12.4.2.   the Promissory Note; and

12.4.3.   the Consulting Agreement, executed by Buyer or Buyer's assignee.

## 13.   REPRESENTATIONS AND WARRANTIES OF SELLER AND IRENE.

Except as to those facts or matters specifically set forth in EXHIBIT V, Irene, only as to the best of her actual knowledge, and Seller represent, warrant and covenant to Buyer as follows:

13.1.   **Corporate Standing.** Seller is a corporation duly organized, validly existing and in good standing under California law, has the corporate power to conduct its present business and is entitled to carry on the business and own, lease, and operate properties used in connection with the business.

13.2.   **Sufficiency of Assets.** The Assets, other than cash and the accounts receivable which are the property of the Seller under this Agreement, are all of the assets of the Business and are sufficient to enable Buyer, following the Closing Date, to conduct the Business as such has been conducted in the past and prior to the Closing Date; provided, however, such representation and warranty does not ensure in any manner that Buyer will suceed and/or profit from the operation of the Assets in the Business.

13.3.   **Ownership of Assets.** Except as set forth on EXHIBIT X, Seller is, and on the Closing Date will be, the lawful owner of the Assets. The assets are owned free and clear of all liens, pledges, encumbrances, options to buy, and claims of any kind or nature. Delivery to Buyer of the documents provided above will vest Buyer with good and marketable title to the Assets, free and clear of all liabilities, liens, pledges, encumbrances, options to buy, and claims of any kind or nature.

13.4.   **Loss Contingencies.** Except as set forth on EXHIBIT Y. To the best of Seller's knowledge and other than those items listed in the Payables, there are no claims, actions, suits, proceedings or investigations pending or threatened against or relating to Seller, Steve or Irene with respect to the Seller, the Assets and/or the Business. This includes, without limitation, those at law or in equity, or

Buyer   Seller

 

before any governmental entity, or by any person which would prohibit or prevent the consummation of this sale as of the Closing Date, or will cause Buyer expenses after the Closing Date.

13.5.   **Payment of Taxes**. Except for those items listed in the Payables, or otherwise set forth on Exhibit Z, Seller has filed all federal, state and local income, excise or franchise tax returns, personal property tax returns, sales and use tax returns, employee withholding tax returns and other tax returns required to be filed by it. Seller has paid all taxes owing by it except taxes which have not yet accrued or become due.

13.6.   **Adverse Conditions**. Seller, to the best of its knowledge, knows of no fact which now or in the future may materially adversely affect the Assets or the Business which has not been specifically disclosed in this Agreement, except as set forth on EXHIBIT O.

13.7.   **Compliance with Laws**. The Business is in full compliance with all laws and regulations. This includes, without limitation, applicable building or fire codes, regulations, ordinances and statutes.

13.8.   **Other Agreements**. Except as previously disclosed to Buyer in writing, neither Seller, Irene, nor Steve is a party to any written or oral agreement relating to all or any interest in the Business, the Assets or the Property, which will affect in any manner Buyer's free and unfettered use and enjoyment of each of them. Neither the execution, performance or delivery of this Agreement by Seller, Steve or Irene violates or breaches any such agreements, which may in any manner affect the ability of Seller, Steve or Irene to complete the transaction set forth in this Agreement.

13.9.   **Authorization**. Seller's execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action. This Agreement includes, without limitation, actions by shareholders and directors. This will not violate Seller's Articles of Incorporation or Bylaws. The execution, delivery and performance of this Agreement by Seller, Steve or Irene will not violate provisions of law or any agreement or other instrument to which any of them is a party or by which it is bound. Nor will it be in conflict with, result in a breach of or constitute (with or without notice and with or without the lapse of time) a default under any agreement, deed of trust, collateral assignment, lien, lease, order, arbitration award, judgment or decision to which any of them is a party or by which it is bound.

13.10.   **Binding Obligation**. Seller, Steve and Irene has duly executed and delivered this Agreement and it constitutes legal, valid and binding obligations enforceable in accordance with its terms against each of them.

Buyer   Seller

101201-5.buy

16



13.11. <u>Violations</u>. Seller has fully complied with all regulations, ordinances, laws, orders, codes, rules, covenants and conditions affecting, relating or applicable to the Business, the Assets and the Property.

13.12. <u>Additional Representations and Warranties</u>. Those additional representations and warranties as more fully set forth on <u>EXHIBIT P</u>, "Additional Representations and Warranties," and any and all Schedules attached thereto.

13.13. <u>Duration of Representations and Warranties</u>. The representations and warranties made herein will be correct in all material respects on and as of the Closing Date with the same force and effect as though they had been made on the Closing Date. They shall survive the Closing for a period of five (5) years; provided, however, the representations and warranties made by Irene shall survive the Closing Date for a period not to exceed the first to occur of: (i) five (5) years or (ii) six months after the entry of a dismissal, with prejudice, of the Roberts Matter, as defined above. To the extent Buyer has any actual knowlege at or before the Closing of the material inaccuracy of any representation or warranty of Seller, Steve and/or Irene, Buyer shall not be able to rely upon any such representation or warranty.

13.14. <u>Correctness of Representations and Warranties</u>. Subject to the limitations as to Irene, set forth in the introduction to Paragraph 13, none of Seller's, Irene's or Steve's representations and warranties contains or will contain on the Closing Date any untrue statement of a material fact. Nor will they omit a material fact necessary to make a statement not misleading. This includes, without limitation, any in an Exhibit or in any statement or certificate furnished or to be furnished by Seller, Irene or Steve pursuant to this Agreement or in connection with this transaction.

13.15. <u>Recourse for Breach of Representation or Warranty</u>. Pursuant to the terms and conditions set forth below, in the event of a breach of any or all of the representations and/or warranties made in this Agreement by Seller, Irene and/or Steve, Buyer shall have the right to offset against the amounts due Seller or Irene under this Agreement or any agreement or instrument attached as an Exhibit hereto, the actual damages suffered or reasonably anticipated as a result of the alleged breach. Provided the amount of an offset exceeds $5,000, upon making such offset, Buyer shall, within thirty (30) days, submit the matter of the the alleged under this subparagraph to binding arbitration as to the issues of the the alleged breach and the amount of the offset and the propriety of such offset. The parties shall conduct such arbitration pursuant to the attached <u>EXHIBIT AAAA</u>. As to offsets less than $5,000, Seller and/or Irene shall have the right to submit said offset claim to arbitration or otherwise proceed by way of judicial action or any other remedy pursuant to this Agreement and California law. Buyers right to offset against Irene other than pursuant to subparagraph 8.3, above, shall be limited to

Buyer     Seller

101201-5.buy



liability resulting from a material breach of a representation or warranty made by Irene, it being acknowleged that the representations and warranties made by Irene in this Agreement are made only to the extent of her actual knowledge. Recourse with respect to such a breach by Irene shall be limited to the extent of all amounts received by Irene or to be received by Irene pursuant to this Agreement and any ancillary agreement attached hereto as an Exhibit. Buyer shall offset first against all amounts due to Seller and then to any amount due to Irene pursuant to this Agreement and any ancillary agreement attached hereto as an Exhibit. To the extent Irene has an obligation to Buyer for indemnification for the Roberts Matter, the offset shall be governed by subparagraph 8.3 hereof.

14.   **THE CONDUCT OF BUSINESS PENDING CLOSING.**

14.1.   **Normal Conduct of Business.** Seller covenants that, from the Effective Date to the Closing Date, each shall use their best efforts to preserve substantially intact Seller's business organization, keep available the services of Seller's present officers and employees and preserve Seller's present relationships with persons having significant business relations therewith, preserve the good will of Seller's customers, employees and suppliers and shall conduct and operate the Seller's Business only in the ordinary course. Without limiting the generality of the foregoing, the Seller shall not without the prior written consent of Buyer, except as required by this Agreement:

(i) borrow or agree to borrow any funds, except in the ordinary course of business pursuant to lines of credit or similar arrangements existing as of the date hereof;

(ii) sell, exchange, or otherwise dispose of, or cause or suffer the sale, exchange or other disposition of any part of the Assets, except in the ordinary course of business and at prices and terms consistent with those historically practiced by the Sellers;

(iii) mortgage, pledge or subject (or suffer to be subjected) any of the Assets to any lien, charge or encumbrance;

(iv) create any receivable (including, without limitation, accounts receivable, notes, advances and receivables due from affiliates) except in arms-length transactions in the ordinary course of business and at prices and terms consistent with those historically practiced by the Sellers ;

(v) sell, assign, license or transfer any right, title or interest in or to, or disclose to any third party any information regarding, any trade name, trademark, service mark, copyright, application for any of the foregoing or other intangible assets used exclusively by it.

Buyer        Seller

101201-5.buy                                     18



14.2.   Prohibited Acts. Seller, Steve and/or Irene will not, without Buyer's prior written consent:

14.2.1.  enter into any contracts or commitments which would obligate Buyer after the Closing Date;

14.2.2.  sell or agree to sell, assign or transfer or encumber all or any interest in the Business, or the Assets, other than in the ordinary course of business;

14.2.3.  suffer or permit the creation of any claim, lien, charge, or other encumbrance on the Business or the Assets; or

14.2.4.  (i) negotiate with or conclude an agreement with any other party for the sale of the capital stock or the assets of the Seller or the merger or consolidation of the Seller with any other entity, on or prior to the earlier of the Closing Date and the date on which this Agreement is terminated by mutual agreement of the Parties hereto, or (ii) enter into any discussions with any other party that may prejudice in any way the consummation of the transactions contemplated hereby.

14.3.   Preservation of Goodwill. Seller will preserve for Buyer the Business' goodwill.  This includes, without limitation, goodwill of suppliers, customers and others having business relations with the Business.

14.4.   Maintenance of Assets. Seller will continue to operate and maintain the Business and all tangible assets included in the Assets in substantially the same manner in which they were being operated and maintained on the date of this Agreement.  This will be done to maintain the Business and the Assets in operable condition on the Closing Date.

14.5.   Consents. The Parties agree to use their best efforts to obtain the required consents and agreements of third parties.

14.6.   Maintenance of Insurance. Seller will maintain in full force and effect, up to and including the Closing Date, all policies of Insurance, other than health or life policies, as set forth on EXHIBIT Q, ("Insurance Policies"), or binders replacing any Insurance Policies, which have or will expire before the Closing Date.

14.7.   Right to Inspect. Seller, Steve and Irene grant to Buyer and its representatives (including, its legal counsel and accountants) full access during normal business hours to all of the premises, files, books, records, contracts, officers, employees, customers, suppliers, accountants, lawyers and facilities of Seller

Buyer   Seller

101201-5.buy




and cause the officers of Seller to furnish such financial and operating data and other information with respect to Seller's Business as Buyer shall from time to time reasonably request, provided, however, that any such investigation shall be conducted with reasonable advance notice at a mutually agreed upon time and date and in such manner as not to interfere unreasonably with the operation of Seller's Business. If, as a result of such investigation, Buyer becomes aware of information prior to the Closing which would make any representation or warranty untrue, Buyer shall notify Seller prior to the Closing, but Buyer shall not have any liability for failure to so notify Seller. During such investigation, Buyer and its representatives shall have the right to make copies of, or excerpts from, such files, books, records and contracts as they may deem advisable.

14.8. Preserve Accuracy of Representations and Warranties of Seller. Between the Effective Date and the Closing Date, Seller, Steve and/or Irene shall refrain from taking, without the prior written consent of Buyer, any action which would render any of the representations or warranties set forth in Article 13 materially inaccurate as of the Closing Date. Seller, Steve and/or Irene shall notify Buyer promptly of the occurrence of any matter, event or change in circumstances after the date hereof and prior to the Closing Date that would have been required to be disclosed in the Schedules if it had occurred prior to the date hereof, but such notification shall not affect any of Buyer's rights under this Agreement.

## 15. BUYER'S REPRESENTATIONS AND WARRANTIES.

Buyer represents and warrants to Seller as follows:

15.1. Standing. Whether Buyer is a corporation or a limited partnership, it shall be duly organized, validly existing and in good standing under California law. Buyer will have the power to conduct its business and shall be entitled to carry on the Business and to own, lease, and operate properties used in connection with the Business.

15.2. Authorization. Buyer's performance of this Agreement shall have been duly authorized by all necessary corporate or partnership action. It will not violate Buyer's Articles of Incorporation, Bylaws or partnership agreement. Buyer's execution, delivery and performance of this Agreement will not violate the provisions of law or of any agreement or other instrument to which Buyer is a party or by which it is bound. Nor will it be in conflict with, result in a breach of, or constitute (with or without notice and with or without the lapse of time) a default under an agreement or other instrument.

15.3. Binding Obligation. Buyer has duly executed and delivered this Agreement. It constitutes Buyer's legal, valid and binding obligations.

Buyer    Seller

101201-3.buy

20

| Jan. 24, 2023 | POST REGISTRATION ACTION MAILED - SEC. 7 | 69471 |
| Jan. 24, 2023 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 69471 |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 04, 2023 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| Dec. 28, 2022 | TEAS SECTION 7 REQUEST RECEIVED | |
| Dec. 10, 2022 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 E-MAILED | |
| Dec. 10, 2022 | REGISTERED AND RENEWED (THIRD RENEWAL - 10 YRS) | 70132 |
| Dec. 10, 2022 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 70132 |
| Dec. 10, 2022 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 70132 |
| Nov. 02, 2022 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| May 27, 2022 | TEAS SECTION 8 & 9 RECEIVED | |
| Jun. 08, 2021 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| May 30, 2012 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 E-MAILED | |
| May 30, 2012 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 66607 |
| May 30, 2012 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 66607 |
| May 24, 2012 | TEAS SECTION 8 & 9 RECEIVED | |
| Feb. 21, 2012 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Mar. 27, 2008 | CASE FILE IN TICRS | |
| Feb. 08, 2002 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Feb. 08, 2002 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Dec. 07, 2001 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | |
| Oct. 15, 1988 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| May 17, 1988 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Jun. 08, 1982 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 16, 1982 | PUBLISHED FOR OPPOSITION | |

**Page 90**
**Exhibit 1**

**For assistance with TSDR**, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR API DATA:** The TSDR Application Programming Interface (API) has limited availability due to system upgrades. We anticipate full return to service for all API users by the end of the month. In the meantime, if you need to retrieve an office action, you can access it directly from the TSDR documents tab located below. We thank you for your patience while we make these improvements.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | Print |
| --- | --- | --- | --- | --- | --- |

**Generated on:** This page was generated by TSDR on 2023-04-03 10:11:29 EDT

**Mark:** CHIPPENDALES

# CHIPPENDALES

**US Serial Number:** 73305435

**US Registration Number:** 1197438

**Register:** Principal

**Mark Type:** Service Mark

**TM5 Common Status Descriptor:**



**Application Filing Date:** Apr. 13, 1981

**Registration Date:** Jun. 08, 1982

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Offic

**Status:** The registration has been renewed.

**Status Date:** Dec. 10, 2022

**Publication Date:** Mar. 16, 1982

## Mark Information

## Goods and Services

## Basis Information (Case Level)

## Current Owner(s) Information

## Attorney/Correspondence Information

## Prosecution History

| Date | Description | Proceeding Number |
| --- | --- | --- |
| Mar. 07, 2023 | OTQR WITHDRAWAL FROM PUBLICATION | 67657 |
| Jan. 26, 2023 | AMENDMENT UNDER SECTION 7 – PROCESSED | 69471 |
| Jan. 25, 2023 | TEAS RESPONSE TO OFFICE ACTION-POST REG RECEIVED | |

SANTA MONICA, CA 90404

**Domestic Representative - Not Found**

### Assignment 8 of 8

---

| | |
|---|---|
| **Conveyance:** | CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026. |
| **Reel/Frame:** | <u>7894/0634</u> |

**Pages:** 47

| | |
|---|---|
| **Date Recorded:** | Nov. 22, 2022 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | |
|---|---|
| **Name:** | <u>EASEBE ENTERPRISES, INC</u> |

**Execution Date:** Jun. 13, 2022

**Legal Entity Type:** CORPORATION

**State or Country Where Organized:** No Place Where Orga

**Assignee**

| | |
|---|---|
| **Name:** | <u>EASEBE ENTERPRISES, INC</u> |

**Legal Entity Type:** CORPORATION

**State or Country Where Organized:** CALIFORNIA

**Address:** 818 7TH ST
LOS ANGELES, UNITED STATES 90017

**Correspondent**

**Correspondent Name:** JESSE BANERJEE

**Correspondent Address:** 1937 22ND STREET
APT 4
SANTA MONICA, CA 90404

**Domestic Representative - Not Found**

### Proceedings - Click to Load

---

| | |
|---|---|
| **Reel/Frame:** **3197/0574** | **Pages:** 8 |
| **Date Recorded:** Nov. 21, 2005 | |
| **Supporting Documents:** assignment-tm-3197-0574.pdf | |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** **BANERJEE, IRENE (BY HELEN MARYMAN, EXECUTRIX)** | | **Execution Date:** Apr. 22, 2005 |
| **Legal Entity Type:** ESTATE | | **State or Country Where Organized:** CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** **CLP TOUR, LTD.** | | |
| **Legal Entity Type:** LIMITED PARTNERSHIP | | **State or Country Where Organized:** CALIFORNIA |
| **Address:** C/O LAW OFFICES OF W. GARY KURTZ 2625 TOWNSGATE ROAD, SUITE 330 WESTLAKE VILLAGE, CALIFORNIA 91361 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** GEOFFREY I. LANDAU |
| **Correspondent Address:** LACKENBACH SIEGEL, LLP ONE CHASE ROAD SCARSDALE, NY 10583 |

**Domestic Representative - Not Found**

## Assignment 7 of 8

| | |
|---|---|
| **Conveyance:** CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026. | |
| **Reel/Frame:** **7836/0440** | **Pages:** 47 |
| **Date Recorded:** Oct. 28, 2022 | |
| **Supporting Documents:** assignment-tm-7836-0440.pdf | |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** **EASEBE ENTERPRISES INC.** | | **Execution Date:** Jun. 13, 2022 |
| **Legal Entity Type:** CORPORATION | | **State or Country Where Organized:** CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** **EASEBE ENTERPRISES INC.** | | |
| **Legal Entity Type:** CORPORATION | | **State or Country Where Organized:** CALIFORNIA |
| **Address:** 818 7TH ST LOS ANGELES, CALIFORNIA 90017 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** JESSE BANERJEE |
| **Correspondent Address:** 1937 22ND STREET APT 4 |

| | | |
|---|---|---|
| **Name:** CLP TOUR, LTD. | **Execution Date:** | Mar. 30, 2000 |
| **Legal Entity Type:** LIMITED PARTNERSHIP | **State or Country Where Organized:** | No Place Where Orga |

**Assignee**

| | | |
|---|---|---|
| **Name:** CHIPPENDALES USA, LLC | | |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** | DELAWARE |

**Address:** P.O. BOX 20240
GREELEY SQUARE STATION
NEW YORK, NEW YORK 10001

**Correspondent**

**Correspondent Name:** LACKENBACH SIEGEL

**Correspondent Address:** HOWARD N. ARONSON
ONE CHASE ROAD
SCARSDALE, NY 10583

**Domestic Representative - Not Found**

## Assignment 5 of 8

| | | |
|---|---|---|
| **Conveyance:** RELEASE BY SECURED PARTY | | |
| **Reel/Frame:** 3197/0529 | **Pages:** | 8 |
| **Date Recorded:** Nov. 21, 2005 | | |
| **Supporting Documents:** assignment-tm-3197-0529.pdf | | |

**Assignor**

| | | |
|---|---|---|
| **Name:** EASEBE ENTERPRISES, INC. | **Execution Date:** | Apr. 22, 2005 |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | |
|---|---|---|
| **Name:** CLP TOUR, LTD. | | |
| **Legal Entity Type:** LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Address:** C/O LAW OFFICES OF W. GARY KURTZ
2625 TOWNSGATE ROAD, SUITE 330
WESTLAKE VILLAGE, CALIFORNIA 91361

**Correspondent**

**Correspondent Name:** GEOFFREY I. LANDAU

**Correspondent Address:** LACKENBACH SIEGEL, LLP
ONE CHASE ROAD
SCARSDALE, NY 10583

**Domestic Representative - Not Found**

## Assignment 6 of 8

| | |
|---|---|
| **Conveyance:** | RELEASE BY SECURED PARTY |

| | |
|---|---|
| **Legal Entity Type:** INDIVIDUAL | **Citizenship:** UNITED STATES |
| **Address:** SUITE 500 | |
| 9107 WILSHIRE BOULEVARD | |
| BEVERLY HILLS, CALIFORNIA 90210 | |

**Correspondent**

| |
|---|
| **Correspondent Name:** THOMAS I. ROZSA, ESQ. |
| **Correspondent Address:** SUITE 1081 |
| IMPERIAL BANK BLDG. |
| 15303 VENTURA BOULEVARD |
| SHERMAN OAKS, CA 91403 |

**Domestic Representative - Not Found**

## Assignment 3 of 8

| | |
|---|---|
| **Conveyance:** SECURITY INTEREST | |
| **Reel/Frame:** <u>1286/0079</u> | **Pages:** 6 |
| **Date Recorded:** Jan. 30, 1995 | |
| **Supporting Documents:** No Supporting Documents Available | |

**Assignor**

| | |
|---|---|
| **Name:** <u>CLP TOUR, LTD.</u> | **Execution Date:** Nov. 10, 1994 |
| **Legal Entity Type:** LIMITED PARTNERSHIP | **State or Country Where Organized:** CALIFORNIA |

**Assignee**

| | |
|---|---|
| **Name:** <u>EASEBE ENTERPRISES, INC.</u> | |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** CALIFORNIA |
| **Address:** SUITE 500 | |
| 9107 WILSHIRE BOULEVARD | |
| BEVERLY HILLS, CALIFORNIA 90210 | |

**Correspondent**

| |
|---|
| **Correspondent Name:** THOMAS I. ROZSA, ESQ. |
| **Correspondent Address:** SUITE 1081 |
| IMPERIAL BANK BLDG. |
| 15303 VENTURA BOULEVARD |
| SHERMAN OAKS, CA 91403 |

**Domestic Representative - Not Found**

## Assignment 4 of 8

| | |
|---|---|
| **Conveyance:** ASSIGNS THE ENTIRE INTEREST | |
| **Reel/Frame:** <u>2112/0521</u> | **Pages:** 3 |
| **Date Recorded:** Jul. 07, 2000 | |
| **Supporting Documents:** <u>assignment-tm-2112-0521.pdf</u> | |

**Assignor**

# TM Staff and Location Information

## Assignment Abstract Of Title Information

### Summary

Convey

**Total Assignments:** 8

**Registrant:** Easebe Enterprises In

### Assignment 1 of 8

| | |
|---|---|
| **Conveyance:** | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |
| **Reel/Frame:** | <u>1286/0026</u> |
| **Date Recorded:** | Jan. 26, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Pages:** 3

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | **EASEBE ENTERPRISES INC.** | **Execution Date:** | Nov. 04, 1994 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | **CLP TOUR LTD.** | | |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** | SUITE 305 16530 VENTURA BLVD. ENCINO, CALIFORNIA 91436 | | |

**Correspondent**

**Correspondent Name:** THOMAS I. ROZSA, ESQ.

**Correspondent Address:** SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

### Assignment 2 of 8

| | |
|---|---|
| **Conveyance:** | SECURITY INTEREST |
| **Reel/Frame:** | <u>1286/0071</u> |
| **Date Recorded:** | Jan. 30, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Pages:** 6

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | **CLP TOUR, LTD.** | **Execution Date:** | Nov. 10, 1994 |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

**Name:** **BANERJEE, IRENE**

| Jan. 24, 2023 | POST REGISTRATION ACTION MAILED - SEC. 7 | 69471 |
| Jan. 24, 2023 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 69471 |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 06, 2023 | TEAS SECTION 7 REQUEST RECEIVED | |
| Jan. 04, 2023 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| Dec. 28, 2022 | TEAS SECTION 7 REQUEST RECEIVED | |
| Dec. 10, 2022 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Dec. 10, 2022 | REGISTERED AND RENEWED (THIRD RENEWAL - 10 YRS) | 70132 |
| Dec. 10, 2022 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 70132 |
| Dec. 10, 2022 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 70132 |
| Nov. 02, 2022 | ASSIGNMENT OF OWNERSHIP NOT UPDATED AUTOMATICALLY | |
| May 27, 2022 | TEAS SECTION 8 & 9 RECEIVED | |
| Jun. 08, 2021 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| May 30, 2012 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| May 30, 2012 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 66607 |
| May 30, 2012 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 66607 |
| May 24, 2012 | TEAS SECTION 8 & 9 RECEIVED | |
| Feb. 21, 2012 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Mar. 27, 2008 | CASE FILE IN TICRS | |
| Feb. 08, 2002 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Feb. 08, 2002 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Dec. 07, 2001 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | |
| Oct. 15, 1988 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| May 17, 1988 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Jun. 08, 1982 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 16, 1982 | PUBLISHED FOR OPPOSITION | |

**Page 98**
**Exhibit 1**

**For assistance with TSDR**, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR API DATA:** The TSDR Application Programming Interface (API) has limited availability due to system upgrades. We anticipate full return to service for all API users by the end of the month. In the meantime, if you need to retrieve an office action, you can access it directly from the TSDR documents tab located below. We thank you for your patience while we make these improvements.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | | Print |
|---|---|---|---|---|---|---|

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2023-04-03 10:11:29 EDT |
| **Mark:** | CHIPPENDALES |

# CHIPPENDALES

| | | | |
|---|---|---|---|
| **US Serial Number:** | 73305435 | **Application Filing Date:** | Apr. 13, 1981 |
| **US Registration Number:** | 1197438 | **Registration Date:** | Jun. 08, 1982 |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |

| | |
|---|---|
| **TM5 Common Status Descriptor:** |  |

LIVE/REGISTRATION/issued and Active

The trademark application has been registered with the Offic

| | |
|---|---|
| **Status:** | The registration has been renewed. |
| **Status Date:** | Dec. 10, 2022 |
| **Publication Date:** | Mar. 16, 1982 |

## Mark Information

## Goods and Services

## Basis Information (Case Level)

## Current Owner(s) Information

## Attorney/Correspondence Information

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Mar. 07, 2023 | OTQR WITHDRAWAL FROM PUBLICATION | 67657 |
| Jan. 26, 2023 | AMENDMENT UNDER SECTION 7 – PROCESSED | 69471 |
| Jan. 25, 2023 | TEAS RESPONSE TO OFFICE ACTION-POST REG RECEIVED | |

# EXHIBIT "A"

| | |
|---|---|
| **Legal Entity Type:** INDIVIDUAL | **Citizenship:** UNITED STATES |
| **Address:** SUITE 500 | |
| 9107 WILSHIRE BOULEVARD | |
| BEVERLY HILLS, CALIFORNIA 90210 | |

**Correspondent**

**Correspondent Name:** THOMAS I. ROZSA, ESQ.

**Correspondent Address:** SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

## Assignment 3 of 8

| | | | |
|---|---|---|---|
| **Conveyance:** | SECURITY INTEREST | | |
| **Reel/Frame:** | 1286/0079 | **Pages:** | 6 |
| **Date Recorded:** | Jan. 30, 1995 | | |
| **Supporting Documents:** | No Supporting Documents Available | | |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | CLP TOUR, LTD. | **Execution Date:** | Nov. 10, 1994 |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | EASEBE ENTERPRISES, INC. | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** | SUITE 500 | | |
| | 9107 WILSHIRE BOULEVARD | | |
| | BEVERLY HILLS, CALIFORNIA 90210 | | |

**Correspondent**

**Correspondent Name:** THOMAS I. ROZSA, ESQ.

**Correspondent Address:** SUITE 1081
IMPERIAL BANK BLDG.
15303 VENTURA BOULEVARD
SHERMAN OAKS, CA 91403

**Domestic Representative - Not Found**

## Assignment 4 of 8

| | | | |
|---|---|---|---|
| **Conveyance:** | ASSIGNS THE ENTIRE INTEREST | | |
| **Reel/Frame:** | 2112/0521 | **Pages:** | 3 |
| **Date Recorded:** | Jul. 07, 2000 | | |
| **Supporting Documents:** | assignment-tm-2112-0521.pdf | | |

**Assignor**

## TM Staff and Location Information

## Assignment Abstract Of Title Information

### Summary

| | | | Convey |
|---|---|---|---|
| **Total Assignments:** | 8 | **Registrant:** | Easebe Enterprises In |

### Assignment 1 of 8

| | |
|---|---|
| **Conveyance:** | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |
| **Reel/Frame:** | 1286/0026 |
| **Pages:** | 3 |
| **Date Recorded:** | Jan. 26, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | EASEBE ENTERPRISES INC. | **Execution Date:** | Nov. 04, 1994 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | CLP TOUR LTD. | | |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |
| **Address:** | SUITE 305 16530 VENTURA BLVD. ENCINO, CALIFORNIA 91436 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | THOMAS I. ROZSA, ESQ. |
| **Correspondent Address:** | SUITE 1081 IMPERIAL BANK BLDG. 15303 VENTURA BOULEVARD SHERMAN OAKS, CA 91403 |

**Domestic Representative - Not Found**

### Assignment 2 of 8

| | |
|---|---|
| **Conveyance:** | SECURITY INTEREST |
| **Reel/Frame:** | 1286/0071 |
| **Pages:** | 6 |
| **Date Recorded:** | Jan. 30, 1995 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | CLP TOUR, LTD. | **Execution Date:** | Nov. 10, 1994 |
| **Legal Entity Type:** | LIMITED PARTNERSHIP | **State or Country Where Organized:** | CALIFORNIA |

**Assignee**

| | |
|---|---|
| **Name:** | BANERJEE, IRENE |

**Page 103**
**Exhibit 1**

 

### 22.2.2.   Mail.

This paragraph applies if the notice, demand or other communication is by mail. Service shall be conclusively deemed given seventy-two (72) hours after its deposit in the United States mail, addressed to the party to whom notice, demand or other communication is to be given.

### 22.3.   Initial Addresses.

**Seller:**

Easebe, Inc.
c/o David Gernsbacher, Esq.
9107 Wilshire Blvd.
Suite 500
Beverly Hills, CA 90210

**Irene:**

Irene Banerjee
151 Napoleon Street
Playa Del Rey, CA 90293

**Copy to:**

David Gemsbacher, Esq.
9107 Wilshire Blvd.
Suite 500
Beverly Hills, CA 90210

**Steve:**

Steve Banerjee
c/o David Gernsbacher, Esq.
9107 Wilshire Blvd.
Suite 500
Beverly Hills, CA 90210

**Buyer:**

CLP Tour, Ltd.,
C/O Chip LP, Inc.
16530 Ventura Blvd.,
Suite 355
Encino, CA 91436

**Copy to:**

Ben Frankel, C.P.A.
Frankel, Lodgen, Lacher, Golditch
& Sardi
16530 Ventura Blvd.
Suite 305
Encino, CA 91436

Buyer    Seller

101201-5.buy

24



## 19.  RECORDS.

Buyer shall have the right to examine, use and make excerpts from any corporate minute books, books of account and other records and documents of Seller which are not included in the Assets, and Seller shall not destroy any such books or records without Buyer's consent for a period of seven years after the Closing. Seller shall have the right to examine, use and make excerpts from any books of account and other records and documents which are transferred to Buyer pursuant to this Agreement for any purposes connected with or relating to any event occurring prior to the Closing Date.

## 20.  BROKERAGE.

Other than the commission to be paid by Seller to Irene Banerjee in the amount of $200,000 from the cash consideration received by Seller hereunder, the Parties represents and warrants to each other that they have done nothing to create liability to pay a commission or compensation in the nature of a finder's fee or similar payment to any broker or other person. Accordingly, they indemnify and save each other harmless from and against any and all claims, liabilities, costs, including, without limitation, attorney fees, or obligations with respect to brokerage or finder's fees or commissions claimed due to this Agreement.

## 21.  SALES TAX.

Seller shall pay any sales tax related to this transaction and indemnify Buyer therefore in the manner set forth in subparagraph 13.15.

## 22.  NOTICES.

22.1.  **Written.** Notices, demands or other communications required or desired to be given under this Agreement by any party shall be in writing.

22.2.  **Service.** They shall be validly given or made to another party if served either personally or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested.

22.2.1.  **Personal.**

This paragraph applies if notice, demand or other communication is served personally. Service shall be conclusively deemed made at the time of personal service.

Buyer    Seller

101201-5.buy

23

16.6. <u>Representations' and Warranties' Accuracy</u>. Seller's representations and warranties shall be true and correct on and as of the Closing Date, with the same force and effect as though they had been made on the Closing Date. Seller shall certify that in writing to Buyer.

16.7. <u>Delivery of Governmental Approval</u>. Buyer shall have received the Governmental Approval, as provided herein.

16.8. <u>Delivery of Documents and Items</u>. Seller shall have delivered to Buyer all of the documents required by this Agreement to be delivered by Seller, Steve and/or Irene.

## 17. CONDITIONS TO SELLER'S OBLIGATIONS.

Seller's obligations are, at its option, subject to the satisfaction on or before the Closing Date of the following conditions:

17.1. <u>Completion of Conditions</u>. Buyer will comply with all this Agreement's terms, covenants and conditions on or before the Closing Date.

17.2. <u>Delivery of Documents: Payment of Purchase Price</u>. Payment of the Purchase Price shall have been properly made.

17.3. <u>Buyer's Resolution</u>. On or before the Closing Date, Buyer shall have delivered to Seller a copy, certified by (i) Buyer's Secretary, of its Board of Directors' resolution or (ii) Buyer's General Partner authorizing this Agreement's execution and delivery to Seller.

## 18. INSTRUMENTS OF TRANSFER AND ASSUMPTION.

The sale, conveyance, assignment, transfer and delivery to Buyer of the Assets shall be effected by such deeds, bills of sale, assignments, drafts, checks and other instruments of transfer as Buyer shall reasonably request and which shall be effective, in the opinion of Buyer's counsel, to vest in Buyer all of Seller's right, title and interest in and to the Assets. Seller shall take all actions as are necessary to put Purchaser in actual possession and control of the Assets. The assumption of Seller's obligations and liabilities which Buyer has agreed to assume pursuant to this Agreement shall be effected by such instruments of assumption as Seller shall reasonably request and which shall be effective, in the opinion of Seller's counsel, to cause the assumption by Buyer of all of such obligations and liabilities.

Buyer _____   Seller _____

101201-5.buy

22




**15.4.** <u>Representations' and Warranties' Duration</u>. Representations and warranties will be correct in all material respects on and as of the Closing Date with the same force and effect as though they had been made on the Closing Date.

**15.5.** <u>Correctness of Representations and Warranties</u>. None of Buyer's representations or warranties, statements or certificates contains or will contain on the Closing Date an untrue statement or material fact.

## 16. <u>CONDITIONS TO BUYER'S OBLIGATIONS</u>.

Buyer's obligations to acquire the Assets, enter into the ancillary agreements provided for in this Agreement, complete the terms and conditions of this Agreement are subject to the satisfaction or waiver by Buyer, in writing, on or before the Closing Date of the conditions listed below. They are for Buyer's benefit and only Buyer can insist on their occurrence as a precondition to the Buyer's obligations under this Agreement.

**16.1.** <u>Officer's and Stockholders' Certificate</u>. Buyer shall have received a certificate executed by the Chairman, President or any Vice President of Seller and by each of Steve and Irene, with respect to the representations and warranties set forth in this Agreement and the due performance and satisfaction in all material respects of the obligations and conditions hereunder to be performed and satisfied by Seller, Steve and/or Irene.

**16.2.** <u>Consents and Waivers</u>. Buyer shall have received all consents and waivers to the transactions contemplated hereby required under all agreements, mortgages, indentures, contracts, licenses, franchises, permits, leases or other instruments, laws, rules or regulations applicable to Seller which are necessary to consummate the transactions contemplated hereby and to preserve Seller's Business.

**16.3.** <u>Licenses and Permits</u>. Buyer shall have received such licenses and permits as may be required to enable Buyer to commence the conduct of Seller's Business on the Closing Date.

**16.4.** <u>Corporate Action</u>. Buyer shall have received copies of the resolutions of Seller's Board of Directors and stockholders, certified by its Secretary, authorizing and approving the execution and delivery of this Agreement and the consummation of the transactions contemplated hereunder.

**16.5.** <u>Completion of Conditions</u>. Seller, Steve and Irene shall have complied and be in compliance at the Closing with the terms and conditions of this Agreement. Seller, Steve and Irene shall certify that in writing to Buyer.

Buyer     Seller

101201-5.buy

21

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the year and day first above written.

SELLER:

Easebe Enterprises, Inc.

By: IRENE BANERJEE
Its: President

STEVE:

_____
STEVE BANERJEE

IRENE:

_____
IRENE BANERJEE

BUYER:

CLP Tour, Ltd.
a California limited partnership
By: Chip, LP, Inc.,
   a California corporation

_____
By: NACE COHEN
Its: President

Buyer    Seller

101201-5.buy

28

the Agreement expressly so provides.

29. **NUMBER AND GENDER.**

The masculine, feminine or neuter gender and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

30. **TIME OF THE ESSENCE.**

Time is of the essence for this Agreement and all its terms, provisions, covenants and conditions.

31. **EXHIBITS AND RECITALS.**

All Exhibits and Recitals are incorporated in this Agreement by this reference as though set forth at length.

32. **SEPARATE COUNTERPARTS.**

This document may be executed in one or more counterparts. Each, when so executed, shall be deemed to be an original. The counterparts shall together constitute and be one and the same instrument.

33. **ENTIRE AGREEMENT.**

This document is the Parties' entire understanding and agreement. Any and all prior agreements, understandings or representations, including the August 11, 1994 letter of intent, are terminated and canceled in their entirety and are of no further force or effect. Each party hereto represents to the other that he, she or it was represented by professional legal counsel in connection with the negotiation and entering into of this Agreement, and that he, she or it fully understood each and every provision hereof prior to entering into this Agreement. This Agreement is to be deemed to have been prepared jointly by the parties, and any uncertainty or ambiguity existing herein shall not be interpreted against any party, but according to the application of the rules of interpretation of contracts.

34. **CAPTIONS.**

Captions are descriptive only and for convenience in reference. If there is a conflict between any caption and the paragraph at the head of which it appears, the paragraph and not the caption shall control and govern in construing this document.

(Signature Page Follows)

Buyer          Seller

101201-5.buy

27




24. **APPLICABLE LAW; SEVERABILITY AND VENUE.**

This document shall, in all respects, be governed by California law applicable to agreements executed and wholly performed within California. Nothing shall be construed to require any act contrary to law. If this Agreement conflicts with a present or future statute, law, ordinance or regulation contrary to which the Parties may not contract, the latter shall prevail. However, the affected provision of this Agreement shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. It shall not invalidate or affect the remaining provisions of the Agreement. This Agreement has been negotiated, executed and is to be wholly performed in Los Angeles County. If suit is initiated against a party for any cause or matter arising from or in connection with the Parties' rights or obligations under this Agreement, the sole jurisdiction and venue for the action shall be the California Superior Court for Los Angeles County.

25. **FURTHER ASSURANCES.**

The Parties shall execute and deliver additional papers, documents, and other assurances, and do any and all acts and things reasonably necessary in connection with the performance of their obligations and to carry out the Parties' intent.

26. **ATTORNEYS' FEES.**

This paragraph applies if a party institutes an action or proceeding in court to enforce any provision or for damages by reason of an alleged breach of this Agreement. The prevailing party may recover from the losing party the amount judged reasonable by the court for attorneys' fees for services rendered to the prevailing party in the action or proceeding. "Prevailing party" includes, without limit, any party made a defendant in litigation in which damages and/or other relief may be sought against the party and a final judgment or dismissal or decree is entered in the litigation in favor of the party defendant.

27. **MODIFICATION OR AMENDMENTS.**

No amendment, change or modification of this document shall be valid unless in writing and signed by all Parties.

28. **SUCCESSORS AND ASSIGNS.**

All the terms and provisions shall inure to the benefit of and be binding upon the Parties and their respective heirs, personal representatives, successors and assigns. Buyer may freely assign its rights and obligations under this Agreement. Subsequent to such assignment, any and all rights and obligations of Buyer shall thereafter be the rights and obligations of Buyer's assignee regardless of whether

Buyer        Seller

101201-5.buy

26

**Page 110**
**Exhibit 1**

 

Copy to:   Bruce Givner, Esq.,
Bruce Givner,
A Professional Corporation
12100 Wilshire Blvd.
Suite 445
Los Angeles, CA 90025

 22.4. <u>Change Of Address</u>. A party may change its address for notices, demands and other communications by a written notice given as described above to the other party.

23. <u>Risk of Loss</u>.

 Seller shall bear the risk of loss or damage to the Assets, or the Property. This includes, without limitation, loss or damage from any casualty.

  23.0.1. <u>Definition</u>.

  "Casualty" includes, without limit, acts of God, fire, explosion, tornado, earthquake, accident, flood, riot, condemnation, theft, damage, or activities of armed forces.

  23.0.2. <u>Definition</u>.

  "Casualty" includes, without limit, acts of God, fire, explosion, tornado, earthquake, accident, flood, riot, condemnation, theft, damage, or activities of armed forces.

  23.0.3. <u>Time</u>.

  Seller's risk shall continue between the date of this Agreement through and including the Closing Date.

  23.0.4. <u>Buyer's Choice</u>.

  This paragraph applies if, on or before the Closing Date, something results in physical loss or damage to Assets or the Property. To the extent loss or damage is not restored by Seller before the Closing Date, Buyer may (i) close this transaction, receive any and all insurance proceeds, and Seller shall be liable for any applicable insurance deductibles, or (ii) terminate this Agreement.

Buyer  Seller

101201-5.buy        25

| | |
|---|---|
| **Name:** CLP TOUR, LTD. | **Execution Date:** Mar. 30, 2000 |
| **Legal Entity Type:** LIMITED PARTNERSHIP | **State or Country Where Organized:** No Place Where Orga |

**Assignee**

| | |
|---|---|
| **Name:** CHIPPENDALES USA, LLC | |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** DELAWARE |
| **Address:** P.O. BOX 20240 GREELEY SQUARE STATION NEW YORK, NEW YORK 10001 | |

**Correspondent**

**Correspondent Name:** LACKENBACH SIEGEL

**Correspondent Address:** HOWARD N. ARONSON
ONE CHASE ROAD
SCARSDALE, NY 10583

**Domestic Representative - Not Found**

## Assignment 5 of 8

| | |
|---|---|
| **Conveyance:** RELEASE BY SECURED PARTY | |
| **Reel/Frame:** 3197/0529 | **Pages:** 8 |
| **Date Recorded:** Nov. 21, 2005 | |
| **Supporting Documents:** assignment-tm-3197-0529.pdf | |

**Assignor**

| | |
|---|---|
| **Name:** EASEBE ENTERPRISES, INC. | **Execution Date:** Apr. 22, 2005 |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** CALIFORNIA |

**Assignee**

| | |
|---|---|
| **Name:** CLP TOUR, LTD. | |
| **Legal Entity Type:** LIMITED PARTNERSHIP | **State or Country Where Organized:** CALIFORNIA |
| **Address:** C/O LAW OFFICES OF W. GARY KURTZ 2625 TOWNSGATE ROAD, SUITE 330 WESTLAKE VILLAGE, CALIFORNIA 91361 | |

**Correspondent**

**Correspondent Name:** GEOFFREY I. LANDAU

**Correspondent Address:** LACKENBACH SIEGEL, LLP
ONE CHASE ROAD
SCARSDALE, NY 10583

**Domestic Representative - Not Found**

## Assignment 6 of 8

**Conveyance:** RELEASE BY SECURED PARTY

| | | | |
|---|---|---|---|
| Reel/Frame: | 3197/0574 | Pages: | 8 |
| Date Recorded: | Nov. 21, 2005 | | |
| Supporting Documents: | assignment-tm-3197-0574.pdf | | |

**Assignor**

| | | | |
|---|---|---|---|
| Name: | BANERJEE, IRENE (BY HELEN MARYMAN, EXECUTRIX) | Execution Date: | Apr. 22, 2005 |
| Legal Entity Type: | ESTATE | State or Country Where Organized: | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| Name: | CLP TOUR, LTD. | | |
| Legal Entity Type: | LIMITED PARTNERSHIP | State or Country Where Organized: | CALIFORNIA |
| Address: | C/O LAW OFFICES OF W. GARY KURTZ 2625 TOWNSGATE ROAD, SUITE 330 WESTLAKE VILLAGE, CALIFORNIA 91361 | | |

**Correspondent**

| | |
|---|---|
| Correspondent Name: | GEOFFREY I. LANDAU |
| Correspondent Address: | LACKENBACH SIEGEL, LLP ONE CHASE ROAD SCARSDALE, NY 10583 |

**Domestic Representative - Not Found**

## Assignment 7 of 8

| | | | |
|---|---|---|---|
| Conveyance: | CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026. | | |
| Reel/Frame: | 7836/0440 | Pages: | 47 |
| Date Recorded: | Oct. 28, 2022 | | |
| Supporting Documents: | assignment-tm-7836-0440.pdf | | |

**Assignor**

| | | | |
|---|---|---|---|
| Name: | EASEBE ENTERPRISES INC. | Execution Date: | Jun. 13, 2022 |
| Legal Entity Type: | CORPORATION | State or Country Where Organized: | CALIFORNIA |

**Assignee**

| | | | |
|---|---|---|---|
| Name: | EASEBE ENTERPRISES INC. | | |
| Legal Entity Type: | CORPORATION | State or Country Where Organized: | CALIFORNIA |
| Address: | 818 7TH ST LOS ANGELES, CALIFORNIA 90017 | | |

**Correspondent**

| | |
|---|---|
| Correspondent Name: | JESSE BANERJEE |
| Correspondent Address: | 1937 22ND STREET APT 4 |

SANTA MONICA, CA 90404

**Domestic Representative - Not Found**

## Assignment 8 of 8

| | |
|---|---|
| **Conveyance:** | CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026. |
| **Reel/Frame:** | <u>7894/0634</u> **Pages:** 47 |
| **Date Recorded:** | Nov. 22, 2022 |
| **Supporting Documents:** | No Supporting Documents Available |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | <u>EASEBE ENTERPRISES, INC</u> | **Execution Date:** | Jun. 13, 2022 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | No Place Where Orga |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | <u>EASEBE ENTERPRISES, INC</u> | **State or Country Where Organized:** | CALIFORNIA |
| **Legal Entity Type:** | CORPORATION | | |
| **Address:** | 818 7TH ST LOS ANGELES, UNITED STATES 90017 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | JESSE BANERJEE |
| **Correspondent Address:** | 1937 22ND STREET APT 4 SANTA MONICA, CA 90404 |

**Domestic Representative - Not Found**

## Proceedings - Click to Load

**Page 114**
**Exhibit 1**

# EXHIBIT "B"

# EXHIBIT "C"

# EXHIBIT "D"

# State of California
## Bill Jones
### Secretary of State

P.O. Box 944230
Sacramento, CA  94244-0230
Phone: (916) 657-3537

96-038705

96-038705
02-24-2020 ym

FILED
SACRAMENTO, CALIF.

JAN 23 1996

Bill Jones
SECRETARY OF STATE

## STATEMENT BY DOMESTIC STOCK CORPORATION
THIS STATEMENT MUST BE FILED WITH CALIFORNIA SECRETARY OF STATE (SEC. 1502, CORPORATIONS CODE)

### FILING FEE MUST ACCOMPANY THIS STATEMENT.

$10  WHEN COMPLETING FORM, PLEASE USE BLACK TYPEWRITER RIBBON OR BLACK INK

IMPORTANT — Please Read Instructions On Back Of Form

DO NOT ALTER PREPRINTED NAME. IF ITEM NO. 1 IS BLANK, PLEASE ENTER CORPORATE NAME.

1.  EAsebe Enterprises Inc  CO 745886
    PO Box 10985
    Marina del rey. CA. 90295.

1. IF THERE HAS BEEN NO CHANGE IN ANY OF THE INFORMATION ON FILE—PROCEED TO LINE 16.     DO NOT WRITE IN THIS SPACE

THE CALIFORNIA CORPORATION NAMED HEREIN, MAKES THE FOLLOWING STATEMENT

| | ROOM NO. | 2A. CITY AND STATE | 2B. ZIP CODE |
|---|---|---|---|
| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE  818 W 7th St. | — | LA   CA | 90017 |
| 3. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA IF ANY  ROOM NO. | | 3A. CITY AND STATE | 3B. ZIP CODE |
| 4. MAILING ADDRESS  PO Box 10985 | ROOM NO. | 4A. CITY AND STATE  Marina Del rey CA | 4B. ZIP CODE  90295 |

THE NAMES OF THE FOLLOWING OFFICERS ARE
Must have three officers (Sec. 312, Corporations Code) the officer may hold more than one office.

| | STREET ADDRESS (DO NOT USE P.O. BOX) | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 5. CHIEF EXECUTIVE OFFICER  Irene Banerjee | 5A.  818 W 7th St. | 5B.  LA CA. | 5C.  90017. |
| 6. SECRETARY  " | 6A.  " | 6B.  " | 6C.  " |
| 7. CHIEF FINANCIAL OFFICER  " | 7A.  " | 7B.  " | 7C.  " |

INCUMBENT DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS
Officers may also be directors.  Must have one or more directors (Chap. 3, Sec. 301a, Corporations Code). Statements not listing directors will be rejected.

| | STREET ADDRESS (DO NOT USE P.O. BOX) | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 8. NAME  Irene Banerjee | 8A.  818 W. 7th St. | 8B.  LA  CA. | 8C.  90017. |
| 9. NAME | 9A. | 9B. | 9C. |
| 10. NAME | 10A. | 10B. | 10C. |

11. THE NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY: — 0

DESIGNATED AGENT FOR SERVICE OF PROCESS   (Only one agent may be named and must reside in California.)

12. NAME  CT Systems.   CO1168406

13. CALIFORNIA STREET ADDRESS IF AGENT IS AN INDIVIDUAL. (DO NOT USE P.O. BOX)(DO NOT INCLUDE ADDRESS IF AGENT IS A CORPORATION.)

14. DESCRIBE TYPE OF BUSINESS OF THE CORPORATION NAMED IN ITEM 1.
    Consulting Services

15. I DECLARE THAT I HAVE EXAMINED THIS STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS TRUE, CORRECT AND COMPLETE.

| Irene Banerjee | Irene Banerjee | Pres | 12/2/95 |
|---|---|---|---|
| TYPE OR PRINT NAME OF SIGNING OFFICER OR AGENT | SIGNATURE | TITLE | DATE |

*16. I DECLARE THERE HAS BEEN NO CHANGE IN THE INFORMATION CONTAINED IN THE LAST STATEMENT OF THE CORPORATION WHICH IS ON FILE IN THE SECRETARY OF STATE'S OFFICE. DOES NOT APPLY ON INITIAL FILING.

(23)

| (CHECK HERE)  | TYPE OR PRINT NAME OF SIGNING OFFICER OR AGENT | SIGNATURE | TITLE | DATE |
|---|---|---|---|---|

SO-200 N/C (REV. 4/85)

Page 122
Exhibit 1

# EXHIBIT "F"



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

NOVEMBER 1, 2022

PTAS

JESSE BANERJEE
1937 22ND STREET
APT 4
SANTA MONICA, CA 90404

# 900728586

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT RECORDATION BRANCH
OF THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE COPY IS AVAILABLE AT THE
ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE PATENT
AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD FIND ANY ERRORS OR HAVE
QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE ASSIGNMENT RECORDATION
BRANCH AT 571-272-3350. PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT
AND TRADEMARK OFFICE, MAIL STOP: ASSIGNMENT RECORDATION BRANCH, P.O. BOX
1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 10/28/2022        REEL/FRAME: 7836/0440
                                    NUMBER OF PAGES: 47

BRIEF: CORRECTION BY DECLARATION ERRONEOUS FILED IN REEL 001286 FRAM 0026.

ASSIGNOR:
    EASEBE ENTERPRISES INC.        DOC DATE: 06/13/2022
                                   CITIZENSHIP: CALIFORNIA
                                   ENTITY: CORPORATION

ASSIGNEE:
    EASEBE ENTERPRISES INC.        CITIZENSHIP: CALIFORNIA
                                   ENTITY: CORPORATION
    818 7TH ST
    LOS ANGELES, CALIFORNIA 90017

SERIAL NUMBER: 73305435            FILING DATE: 04/13/1981
REGISTRATION NUMBER: 1197438       REGISTRATION DATE: 06/08/1982
MARK: CHIPPENDALES
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

ASSIGNMENT RECORDATION BRANCH
PUBLIC RECORDS DIVISION